IN RE the PATERNITY OF: DUSTINE R. P.

STATE of Wisconsin, Petitioner-Respondent,

v.

RONALD L. M., Respondent-Appellant.†

Court of Appeals

*No. 93–3231. Submitted on briefs April 25, 1994.—Decided May 10, 1994.*

(Also reported in 518 N.W.2d 270.)

†Petition to review denied.

455

On behalf of respondent-appellant, the cause was submitted on the briefs of *John P. Richie* of *Misfeldt, Stark, Richie and Wickstrom* of Eau Claire.

On behalf petitioner-respondent, the cause was submitted on the brief of *Michael P. Weiler* of *Weiler and Buslee* of Ladysmith.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Ronald L. M. appeals a judgment of paternity, claiming that the trial court erred by precluding his use of an expert witness and the introduction of medical records into evidence, each of which bore on the issue of Ronald's sterility. He also challenges an order denying his motion for a new trial because of these errors in the trial. *See* § 805.15(1), STATS.[1] The trial court ruled that the witness could not be used because Ronald's failure to name an expert violated the pretrial scheduling order, and that the medical records showing sterility in 1993 were not demonstrably relevant to the child's conception almost

---

[1] Section 805.15(1), STATS., provides: "(1) Motion. A party may move to set aside a verdict and for a new trial because of errors in the trial . . . ."

456

seven years earlier. The rulings were within the reasonable exercise of the court's discretion, and there was no error. We therefore affirm.

The Rusk County Child Support Agency filed this paternity action on March 20, 1992. It alleged that Ronald was the father of a child born in October 1987. Accompanying the summons and complaint was a "NOTICE TO RESPONDENT." It includes among its provisions: "The following defenses are available to you: . . . That you were sterile or impotent at the time of conception . . . ."[2]

Ronald made his appearance, denied paternity and demanded blood tests in April 1992. The test results showed Ronald's probability of paternity to be 99.28%. Ronald appeared with counsel for a pretrial hearing in July 1992. Additional DNA testing was ordered and test results showed probability of Ronald's paternity as 99.99%.

The court entered a scheduling order dated May 11, 1993, setting the matter for jury trial on August 5, 1993. The order set July 1, 1993, as the deadline for disclosure of expert witnesses and any motions in limine. The State filed its disclosure of experts and other motions prior to the deadline.[3] Ronald filed a motion dated August 3 seeking to delay the trial and to amend the time for naming experts to August 3. The

---

[2] This notice is required by § 767.455(5g)5(a), STATS.

[3] Ronald appears to have disregarded the scheduling order on an earlier occasion. He filed a motion in limine on July 13, 1993, asking to limit evidence of sexual intercourse between the parties to the statutory conception period. He stated that the motion "is based upon the fact that no expert witnesses will be called by either side to testify about the likelihood of conception occurring outside the statutorily determined probable conception period."

stated ground was "newly discovered evidence." Defense counsel's affidavit stated: "I was first informed by my client that he had undergone sterility testing . . . and . . . discovered on July 29, 1993, that he is totally sterile . . . ." The trial court heard arguments by telephone and denied the motions. The court found "that [Ronald] had ample opportunity to have had a sperm count performed much earlier to have allowed him to disclose an expert in accordance with the deadline of July 1, 1993."

At trial on August 5, 1993, Ronald renewed his request to call the physician and to grant an adjournment, if necessary, to allow the prosecution to investigate. He made an offer of proof that the expert would testify that Ronald was sterile and, "because there has been no disease or illness that would likely have caused sterility from the time this child was born," Ronald was sterile at the time of conception. The court noted that at the unrecorded telephone hearing, the corporation counsel had opposed the motion because "his client would be prejudiced [and] that they [sought a prompt paternity judgment] so that the child can take advantage of all of the rights that a child would have [thereunder]." The court again denied the motion, noting that it was made "with a jury coming in," that the State would be prejudiced by an adjournment, especially in light of the child's age, and that the probative value of the evidence was diminished by the delay between conception and testing.

During trial, pursuant to the records exception to the hearsay rule,[4] Ronald offered into evidence,

---

[4] Section 908.03(6), STATS., provides:

Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from infor-

through the medical records custodian of the clinic, documents to show that he had sterility testing performed on two separate occasions within ten days of trial, and that he was completely sterile. The court sustained the prosecution objection and excluded the records on grounds of limited relevancy. The jury found Ronald to be the father of the child.

In support of his postverdict motion for a new trial on grounds of trial error, Ronald filed the affidavit of his proposed expert, a family practice physician at the Bloomer Medical Clinic. The affidavit stated that the physician was competent to perform sterility testing, and had done so for many years. He stated that he tested Ronald in July and August 1993, and that it "would be physically impossible for Ronald . . . to father a child." The affidavit also alleged: "There is no medical means to know when and why Ronald . . . became sterile, unless one knew of a vasectomy or severe injury to the testicles. . . . Assuming none of these occurred between 1987 to the present, then Ronald . . . was probably sterile in 1987 and unable to father a child in 1987." The court denied the motion for a new trial.

Ronald does not contest the trial court's general authority to impose sanctions for failing to comply with pretrial orders. Section 802.10(3)(d), STATS., provides for sanctions for violation of a scheduling order as provided by § 805.03, STATS. Section 805.03 provides:

> Failure to prosecute or comply with procedure statutes. For failure of . . . any party . . . to obey any order of [the] court, the court in which the action is pending may make such orders in regard to the

mation transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

failure as are just, including but not limited to orders authorized under s. 804.12(2)(a).

Section 804.12(2)(a)2, STATS., provides:

> Failure to comply with order. (a) If a party . . . fails to obey an order . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> 2. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence[.]

The well-known general rule for our review of the trial court's exercise of discretion has been stated as follows:

> A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.

*Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981).

If we apply this standard to this case, we must sustain the trial court's decision. The relevant facts are undisputed. Ronald was advised of his right to a sterility defense in the notice that accompanied the summons and complaint. The court issued a scheduling order that Ronald appears to have ignored. Ronald

never offered the trial court any explanation for waiting until the week before trial to submit to testing. He tacitly concedes he has none.

■

The law is equally undisputed. Section 804.12(2)(a), STATS., permits the sanction imposed. The court considered but rejected an adjournment as an alternative to exclusion. It gave as reasons the egregious nature of Ronald's tardiness, the prejudice to the child in obtaining a paternity judgment and support order, and the limited probative value of the proffered evidence. The court used a rational process to apply the law to the facts of record, and we decline to hold that its decision is unreasonable as a matter of law.

■

In addition to the statutory sanctions, this court has also approved the use of inherent power to punish for failing to comply with a pretrial order for a list of lay witnesses. *Carlson Heating, Inc. v. Onchuck*, 104 Wis. 2d 175, 311 N.W.2d 673 (Ct. App. 1981). In that case, the trial court dismissed the plaintiff's complaint. The trial court here did not expressly state whether it was imposing the sanction pursuant to statute or its inherent power. In either case, the authority exists, and the court may use it.

Ronald argues, however, that the trial court was bound to apply the test adopted in *Fredrickson v. Louisville Ladder Co.*, 52 Wis. 2d 776, 191 N.W.2d 193 (1971). That case upheld the trial court's discretion in permitting an expert to testify, despite the violation of the court's oral pretrial scheduling order. *Fredrickson*, however, applied a rule that was later expressly withdrawn by our supreme court when it adopted the Wisconsin Rules of Evidence, including § 904.03,

461

STATS.[5] Further, *Fredrickson* predates the current statutes that expressly authorize sanctions. However,

[5] *Fredrickson v. Louisville Ladder Co.*, 52 Wis. 2d 776, 191 N.W.2d 193 (1971), considered the issue of whether the trial court may exclude a witness, called in violation of a scheduling order, governed by Rule 303 of the Model Code of Evidence, previously adopted by the court in *Whitty v. State*, 34 Wis. 2d 278, 294, 149 N.W.2d 557, 564 (1967). That rule allows the trial court to:

> (1) . . . exclude evidence *if it finds that its probative value is outweighed by the risk that its admission will*
>
> . . . .
>
> (c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered.

Effective January 1, 1974, our supreme court adopted the Wisconsin Rules of Evidence. Section 904.03, STATS., provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This rule excludes that part of RULE 303 of the Model rule relied upon in *Fredrickson.* The Judicial Council Committee's Note—1974 to § 904.03 provides:

> This section has its genesis in Rule 303 of the Model Code. . . . S. 904.03 changes the Model Code Rule 303 by withdrawing surprise as a specific ground for its exercise. McCormick has noted that surprise is usually "coupled with the danger of prejudice and confusion of issues." The Federal Advisory Committee Note suggests that a continuance is a more appropriate remedy for surprise than exclusion. That view was endorsed in Fredrickson v. Louisville Ladder Co., 52 Wis. 2d 776, 191 N.W.2d 193 (1971) and Kirkpatrick v. State (DNR), 53 Wis. 2d [522], 192 N.W.2d 856 (1972), petition for certified, 40 U.S.L.W. 3569 (U.S. May 30, 1972) (No. 1520), in considering whether surprise outweighed the probative value of the evidence. Note however that testimony which results in surprise may be excluded if the surprise would require a continuance and thus undue delay.

because the trial court applied *Fredrickson* in the postverdict motion ruling without objection from the prosecution, we will consider it here. The result does not change.

It must first be observed that *Fredrickson* upheld the trial court's exercise of discretion in admitting the evidence, while Ronald wants this court to reject the court's exercise of discretion. The appellate court will look for reasons to sustain the trial court's discretionary decision. *Looman's v. Milwaukee Mut. Ins. Co.*, 38 Wis. 2d 656, 662, 158 N.W.2d 318, 320 (1968). It is not important that one trial judge may reach one result and another trial judge a different result based upon the same facts. Discretion has been described as a "limited right to be wrong." *State v. McConnohie*, 113 Wis. 2d 362, 370, 334 N.W.2d 903, 907 (1983). As long as the trial court applies the facts to the law to reach a reasoned and reasonable result, it matters not that the results in similar cases may be different.

*Fredrickson* , as is the case here, involved the issue of use of a witness whose proponent failed to comply with disclosure requirements of a pretrial order. *Fredrickson* may further be distinguished, however, because the disputed witness provided only cumulative evidence. *Id.* at 784, 191 N.W.2d at 196.

The provision in the Model Code of Evidence applied in *Fredrickson* allowed the trial court to weigh the probative value of the evidence against the risk that its admission would unfairly surprise a party who had not had reasonable grounds to anticipate that such evidence would be offered. *Id.* at 783, 191 N.W.2d at 196. It cannot be denied that the prosecution had no reasonable grounds to anticipate the evidence here.

Even defense counsel was unaware that his client sought testing until informed just days before trial.

Ronald argues, however, that the evidence was not an "unfair" surprise. His argument is based upon the fact that the prosecution did not interpose a claim of unfairness when the witness was disclosed. We do not consider this failure important under the circumstances. Ronald's claim of sterility was so unexpected as to require the court to hear the request by telephone with little notice. The court noted that the hearing was not recorded because the county lacked the necessary facilities. Ronald raised the *Fredrickson* analysis for the first time after trial. In fact, if we were to examine the pretrial proceedings in the technical fashion Ronald suggests, it would work to his disadvantage. Ronald's offer of proof preceding trial, as noted previously, suggested sterility "from the time this child was born." Thus, he did not offer to prove sterility from the time of conception. Such a technical view of Ronald's offer would be unfair, and we attribute the discrepancy to the sudden and unexpected circumstance in which it arose. However, we can similarly attribute the prosecution's failure to claim the offer was "unfair" to the same circumstance. Thus, neither party should be held to a waiver or estoppel analysis.

Ronald argues further, however, that the surprise was not "unfair" in another sense: Because the scheduling order permitted him to disclose his expert on July 1, he could have done so and effectively prohibited the prosecution from further discovery or preparation anyway. This suggestion is also without merit. It ignores the concept of fairness inherent in the trial court's exercise of discretion. The court retained its authority to

modify its scheduling order upon any just basis. Thus, it could have granted an adjournment to the State if its surprise was genuine and reasonable, just as it could have granted an adjournment to Ronald if he had offered a reasonable excuse for his delay in raising a sterility defense.

Under the circumstances, we are also puzzled by Ronald's challenge to the court's attempt to weigh the probative value of his proposed evidence. The *Fredrickson* test Ronald espouses suggests that the court do just that. Thus, the court suggested that the probative value of the physician's testimony was limited in light of the time between conception and the test. We note that the probative value was severely limited in another critical respect. Ronald never offered to prove that he had not suffered an injury, illness or had a vasectomy after conception. The physician's affidavit, as noted earlier, indicated he was "[a]ssuming none of these [surgery or injuries] occurred between 1987 to the present . . . ." Assumptions by an expert must have some support in the evidence in order to be probative. *Schulz v. St. Mary's Hosp.*, 81 Wis. 2d 638, 653, 260 N.W.2d 783, 788 (1978). The court did not err by considering the weight of the evidence under the *Fredrickson* analysis.

Ronald further contends that the court could not give additional reasons for excluding the evidence after trial and was limited to whatever statements it made when ruling prior to trial. He cites no authority for such a contention, and we reject it. As noted, *Fredrickson* was not called to the court's attention until posttrial. Ronald seeks a new trial upon trial error. If the court can determine in retrospect that its decision was

465

proper and that determination is in accord with the law and the facts, we should and do affirm it.

As noted in *Fredrickson* and confirmed in the Judicial Council Committee Note to § 904.03, STATS., the focus should not be upon exclusion of evidence, but upon the propriety of an adjournment. *See* note 5.

We conclude that the trial court did not erroneously exercise its discretion by denying an adjournment. While exclusion of evidence is a drastic remedy, the trial court was warranted in considering Ronald's tardiness exceedingly offensive. He was informed of the sterility defense in early 1992. He waited sixteen months, until the week before the August 1993 trial to pursue it. Most importantly, he failed to offer any explanation whatsoever for the delay. We must conclude, as did the trial court, that he had none. When we add the factors of the child's age, and the understandable desire to promptly obtain a judgment and child support, to the concern for judicial economy and respect for the court's authority, these concerns justify the remedy here. A party may not ignore the court's order with impunity. If Ronald had a reasonable explanation for his conduct, he should have disclosed it.

Ronald finally challenges the failure to admit the clinic records. He argues that the court must admit all testimony deemed relevant under §§ 904.01 and 904.02, STATS. This challenge is without merit. It ignores the provisions of § 904.03. Further, *Dahl v. K Mart*, 46 Wis. 2d 605, 612, 176 N.W.2d 342, 346 (1970) (quoting *Rausch v. Buisse*, 33 Wis. 2d 154, 166, 146 N.W.2d 801, 807 (1966)), holds:

> Rejection of evidence because of remoteness rests in the trial court's discretion. Remoteness in

point of time does not necessarily render evidence irrelevant but it may do so where the lapsed time is so great as to negative all rational or logical connection between the fact sought to be proved and the remote evidence offered in proof thereof.

The medical records here only showed sterility in July 1993. Conception occurred almost seven years earlier. The court did not erroneously exercise its discretion by excluding the records.

*By the Court.*—Judgment and order affirmed.