Patricia S. MAGYAR, Individually, and As Special Administrator of the Estate of Anthony F. Magyar, Deceased, Plaintiffs-Respondents,

CITY OF MILWAUKEE, Involuntary-Plaintiff,

v.

WISCONSIN HEALTH CARE LIABILITY INSURANCE PLAN, and Lawrence J. Frazin, M.D., Defendants-Appellants-Petitioners,

WISCONSIN PATIENTS COMPENSATION FUND, Defendant-Co-Appellant-Petitioner.

NEUROLOGICAL SURGERY OF MILWAUKEE, S.C., Defendant-Intervenor.

Supreme Court

*No. 95–0972. Oral argument April 30, 1997.—Decided June 27, 1997.*

(Also reported in 564 N.W.2d 766.)

ABRAHAMSON, C.J., concurs.
GESKE, J., joins.
GESKE, J., concurs.
ABRAHAMSON, C.J., STEINMETZ, BABLITCH, WILCOX, BRADLEY, and CROOKS, J.J., join.

For the defendants-appellants-petitioners there were briefs by *Michael P. Malone, Susan R. Tyndall* and *Hinshaw & Culbertson,* Milwaukee and oral argument by *Susan R. Tyndall.*

For the defendant-co-appellant-petitioner there were briefs by *James M. Fergal, Linda V. Meagher* and *Schellinger & Doyle, S.C.,* Brookfield and oral argument by *James M. Fergal.*

For the plaintiffs-respondents there was a brief by *William M. Cannon, Mark L. Thomsen* and *Cannon &*

*Dunphy, S.C.,* Brookfield *and oral argument by William M. Cannon.*

For the defendant-intervenor there was a brief by *Todd M. Weir* and *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.,* Milwaukee.

¶ 1. WILLIAM A. BABLITCH, J. On the day trial commenced in Patricia Magyar's medical malpractice action against numerous defendants, Ms. Magyar and one of the defendants, Neurological Surgery of Milwaukee (NSM), asked the circuit court to approve a settlement agreement between them dismissing NSM from the lawsuit. The settlement was contingent on a ruling by the circuit court excluding an expert witness named only by NSM, Dr. Proctor, from testifying at trial. The non-settling defendants objected, but the circuit court approved the settlement and ordered that the non-settling defendants could not call Dr. Proctor as a witness. The non-settling defendants contend that the exclusion of Dr. Proctor's testimony was an erroneous exercise of discretion by the circuit court. We agree. Accordingly, we reverse and, inasmuch as this evidence went solely to the issue of liability, we remand to the circuit court for a new trial to determine liability.

¶ 2. The relevant facts are as follows: On December 13, 1990, Dr. Frazin performed surgery on Anthony Magyar. Nine days later, Mr. Magyar died. His widow, Patricia Magyar, filed a medical malpractice action against Dr. Lawrence Frazin, Wisconsin Health Care Liability Insurance Plan (WHCLIP), Wisconsin Patients Compensation Fund (the Fund), and NSM alleging that Dr. Frazin's negligence caused Mr. Magyar's death. Specifically, Ms. Magyar alleged that Dr.

299

Frazin's failure to order peri-operative antibiotics for Mr. Magyar led to the infection which caused his death.

¶ 3. Pursuant to Wis. Stat. §§ 802.10(3)(b) and 802.11, the Milwaukee County Circuit Court, Judge Thomas P. Doherty, presiding, issued a scheduling order establishing the deadlines by which the parties were required to serve each other with a complete list of witnesses. Ms. Magyar identified Dr. Butler, a neurosurgeon, and Dr. Buggy, an infectious disease expert and one of Mr. Magyar's treating physicians, as the expert witnesses she planned to call at trial. Dr. Frazin named himself and Dr. Sypert, neither of whom was an infectious disease expert.

¶ 4. During discovery depositions, Dr. Buggy testified that Mr. Magyar should have received antibiotics at the beginning of the operative procedure, i.e., on December 13, 1990. After Dr. Buggy's deposition, NSM filed a motion to adjourn the trial and amend the scheduling order so that it might have additional time to name an infectious disease specialist to respond to Dr. Buggy's testimony. NSM's motion was granted. Although the other defendants had reserved the right to supplement their witness lists upon completion of the discovery depositions of plaintiffs' expert witnesses, neither the Fund, WHCLIP, nor Dr. Frazin did so.

¶ 5. The amended scheduling order required NSM to advise Ms. Magyar of the general nature of the testimony of its expert witnesses. NSM named Dr. Jerva, the Fund's neurosurgical expert and Dr. Proctor, an infectious disease specialist. As to the general nature of Dr. Proctor's testimony, on May 31, 1994, NSM stated that Dr. Proctor believed that commencing antibiotics on December 15, 1990 or later probably would not have altered the outcome in this case.

¶ 6. On Wednesday, November 23, 1994, the day before Thanksgiving and 5 days before the trial was scheduled to begin, NSM sent Ms. Magyar and the defendants a letter by fax clarifying Dr. Proctor's opinions. This letter revealed that Dr. Proctor disagreed with "Dr. Buggy's contention that antibiotics at any time. . .would have altered the outcome of this case."

¶ 7. On the morning trial was to commence, Ms. Magyar and NSM informed the circuit court and the other defendants that they had reached an agreement to dismiss NSM as a party. NSM's dismissal was contingent on a ruling by the circuit court that Dr. Proctor, NSM's witness, could not testify at trial. The other defendants had not named Dr. Proctor or any other infectious disease expert as a trial witness. The non-settling defendants objected to the exclusion of Dr. Proctor's testimony. The circuit court rejected their objections and approved the settlement. Dr. Proctor did not testify at the trial.

¶ 8. The court of appeals affirmed, concluding that WHCLIP, Dr. Frazin, and the Fund (the non-settling defendants) were required by the scheduling order to name the witnesses they intended to call at trial. Because the non-settling defendants neither named Dr. Proctor, nor included a provision in their witness lists "to call any witness named by any other party," the court of appeals resolved that it could not conclude that the circuit court's decision to exclude Dr. Proctor was an erroneous exercise of discretion. The court of appeals further concluded that it was not erroneous for the circuit court to deny the non-settling defendants' motion for a continuance to enable them to secure another infectious disease expert because the trial had already been adjourned on four separate occa-

sions and another adjournment would result in another year's delay.

¶ 9. This case presents a single issue for review: whether the circuit court erroneously exercised its discretion when it excluded Dr. Proctor's testimony from the trial.

¶ 10. The circuit court has the discretion to exclude the testimony of a witness if a party is prejudiced by opposing counsel's failure to name that witness. *Milw. Rescue Mission v. Milw. Redev. Auth.*, 161 Wis. 2d 472, 490, 468 N.W.2d 663 (1991); *Fredrickson v. Louisville Ladder Co.*, 52 Wis. 2d 776, 782, 191 N.W.2d 193 (1971). The circuit court's exercise of discretion will be upheld absent an erroneous exercise of discretion. *Milwaukee Rescue Mission*, 161 Wis. 2d at 490.

¶ 11. The court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and reaches a reasonable conclusion using a demonstrated rational process. *Id.* If the circuit court bases the exercise of its discretion upon an error of law, its conduct is beyond the limits of discretion. *State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

¶ 12. The non-settling defendants contend that the circuit court erroneously exercised its discretion by applying the wrong legal standard to the facts. Dr. Proctor is an infectious disease specialist, and the theory of Ms. Magyar's case was that Dr. Frazin's failure to order peri-operative antibiotics resulted in an infection which caused Mr. Magyar's death. Thus, they argue, Dr. Proctor's testimony was highly relevant to the issue of liability.

¶ 13. In support of their argument, the non-set-tling defendants point to the legal standard governing the circuit court's power to exclude relevant evidence, Wis. Stat. § 904.03:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presenta-tion of cumulative evidence.

They argue that this highly probative evidence was not outweighed by any of the statutory considerations.

¶ 14. Ms. Magyar argues that the probative value of Dr. Proctor's testimony was outweighed by her surprise in learning, just five days before trial, that the general nature of Dr. Proctor's testimony had signifi-cantly changed. Ms. Magyar contends that unless Dr. Proctor was excluded from testifying, she would have been unfairly prejudiced by having to respond to a dif-ferent defense than that which she had anticipated and for which she had prepared.

¶ 15. Although Wis. Stat. § 904.03 does not list "surprise" as a specific ground for excluding evidence, a witness whose testimony results in surprise to the opposing counsel may be excluded if the surprise would require a continuance causing undue delay or if sur-prise is coupled with the danger of prejudice and confusion of issues. *Lease America Corp. v. Ins. Co. of N. America*, 88 Wis. 2d 395, 400, 276 N.W.2d 767 (1979).

¶ 16. *Fredrickson* suggests that the drastic mea-sure of excluding a witness should be avoided by giving

303

the surprised party more time to prepare, if possible. *Fredrickson*, 52 Wis. 2d at 784. *See also*, Judicial Council Committee's and the Federal Advisory Committee's Notes pertaining to § 904.08, 59 Wis. 2d at R73-R75. This suggestion is based on "the policy of discovering all of the truth." *Fredrickson*, 52 Wis. 2d at 784 (citation omitted). Accordingly, continuance is usually the more appropriate remedy for surprise; exclusion should be considered only if a continuance would result in a long delay. *State v. O'Connor*, 77 Wis. 2d 261, 287–88, 252 N.W.2d 671 (1977). Ms. Magyar did not raise the issue of a continuance before the circuit court.

¶ 17. The question then becomes whether the surprise was unfair, and, if so, whether the unfair surprise outweighed the probative value of the evidence. *Jenzake v. City of Brookfield*, 108 Wis. 2d 537, 543, 322 N.W.2d 516 (Ct. App. 1982).

■

¶ 18. Upon review of a discretionary decision, the test is not whether this court as an original matter would have denied the motion; it is whether the circuit court erroneously exercised its discretion in doing so. *Schneller v. St. Mary's Hospital*, 162 Wis. 2d 296, 306, 455 N.W.2d 250 (1991). Thus, our purpose upon review is not to decide the merits of Ms. Magyar's arguments, but rather to determine whether the circuit court applied the proper legal standard to the facts of this case. Accordingly, we turn to the transcript of the November 28th hearing in which the circuit court issued its order to determine whether the circuit court's analysis was guided by Wis. Stat. § 904.03:

> THE COURT: All right. The court has heard no argument to the contrary and will proceed under the assumption that it has the discretion to rule

either way in this matter. And I am prepared to do so.

But to put it in the context of what is going through my mind, it is this:

That with regard to Dr. Proctor, he was available insofar as, I assume, that he was subject to depositions by any party in this lawsuit. His identity was disclosed fairly early—fairly early in the sense of after the—Mr. Weir [NSM's counsel]—Mr. Weir's appearance in the case. He was the first expert on behalf of any defendant in the area of infectious disease.

Plaintiff apparently had already disclosed that they had one and, in fact, he had been deposed, Dr. Buggy.

So it is apparent at that time or should be apparent to all concerned that infectious disease or that subject was going to be—was going to be the subject matter—a subject matter in this lawsuit as well as the fact that cause of death—as pointed out by Mr. Cannon—also alluded to that.

*So the significance of infectious disease testimony was or should have been apparent to all parties* at the time of Dr. Buggy's deposition and certainly when Dr. Proctor is identified as an expert on behalf of NSM.

R.166:109–10 (emphasis added). As we review the record, we look for reasons to sustain the circuit court's discretionary decision. *In re Paternity of Dustine R.P.*, 185 Wis. 2d 452, 463, 518 N.W.2d 270 (Ct. App. 1994). From the circuit court's discussion of the significance of infectious disease testimony, we conclude that the court considered the probative value of Dr. Proctor's testimony and found that it was significant to the issue of liability.

¶ 19. Next, we consider whether the circuit court considered the element of surprise to the plaintiff. The

circuit court concluded that the significance of infectious disease testimony was or should have been "apparent to all," i.e., none of the parties should have been surprised that infectious disease testimony was going to be offered at trial. The court's discussion suggests that since the significance of Dr. Proctor's testimony was apparent to all, and Dr. Proctor was available for deposition, that if a party was surprised by the content of his testimony, it should not have been. In other words, even if the plaintiff was "surprised" by the nature of Dr. Proctor's testimony, the surprise was not "unfair."

¶ 20. However, the next step the circuit court should have taken in its analysis was to weigh the probative value of Dr. Proctor's testimony, which it found "significant," against the danger of unfair surprise, which it found nonexistent. Under Wis. Stat. § 904.03, relevant evidence is excluded only if the probative value of the evidence is outweighed by, *inter alia*, unfair surprise. The only reasonable conclusion that can be reached when weighing no danger of unfair surprise against a significant probative value is that the evidence must be admitted. The circuit court reached the opposite conclusion. The circuit court concluded that despite the highly probative value of the evidence and the lack of unfair surprise, the evidence would nonetheless be excluded. This was not a reasonable conclusion and, hence, was an erroneous exercise of discretion. *See Milwaukee Rescue Mission*, 161 Wis. 2d at 490 (stating that the circuit court "properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and reaches a *reasonable conclusion*") (emphasis added).

¶ 21. Further review of the record illuminates the circuit court's rationale for its erroneous conclusion:

> I am always kind of reluctant to preclude legitimate evidence from coming in before a jury, but that's not an absolute.
>
> And I am satisfied that in this situation, that there are ways for counsel for the two other defendants to protect themselves insofar as this type of potential. And I—I don't know that it's a very extraordinary situation at all.
>
> As I indicated in my opening remarks here, that settlements, arrangements and compromises that others may consider conspiracies, if you will between certain parties of the lawsuit occur and, often times, on the day of trial or, for that matter, in the course of trial.
>
> I — In weighing the equities in this situation, it seems to me that they weigh towards the—Mr. Weir and his client [NSM] and at least vicariously, Mr. Cannon [Ms. Magyar's attorney], and that since the production of Dr. Proctor by anyone other than Mr. Weir who has named him would be outside the scheduling order and the anticipation—well, was only named as a witness by—by Mr. Weir, and that it was an accommodation, as a matter of fact, limited to Mr. Weir to make himself—make a witness available such as Dr. Proctor.
>
> I think the equities weigh on that side of the issue, and the court will, in effect, grant the request of Mr. Weir and Mr. Cannon and preclude the testimony of Dr. Proctor on behalf of either of the two defendants or, for that matter, the plaintiff, should that unlikely situation occur at the trial.

R.166:113–14. The equities, the circuit court concluded, weighed heavily in favor of allowing NSM to be dismissed from the lawsuit. By focusing on the equity

to NSM, the circuit court interjected an improper legal standard into its analysis. This was an erroneous exercise of discretion that resulted in the improper exclusion of evidence that was highly relevant to the issue of the defendants' liability.[1]

■■■■

¶ 22. In sum, in determining whether to exclude Dr. Proctor from testifying at trial, the circuit court properly considered the factors of probative value and unfair surprise. Having determined that the evidence was highly probative and that there was not unfair surprise to the plaintiff, on its face, the court could have reasonably reached only one conclusion: the evidence would not be excluded. However, the court reached the opposite result, based largely if not entirely on an improper legal standard, namely the equities to the settling defendant. When a circuit court applies the proper legal standard to the relevant facts but arrives at an unreasonable conclusion, it goes beyond the limits of discretion. Similarly, the application of an improper legal standard is an erroneous

---

[1] The parties also suggest that the circuit court may have been sanctioning the non-settling defendants for their failure to comply with the scheduling order. Exclusion of a witness is, under the appropriate circumstances, a means of sanctioning a party for its failure to comply with a scheduling order, *Schneller*, 162 Wis. 2d 296. However, exclusion of a witness is an extreme sanction for egregious noncompliance that lacks a clear and justifiable excuse. *Id.* at 311. Neither the circuit court's ruling, nor the record suggests that Dr. Proctor's exclusion was a sanction for the non-settling defendants' failure to comply with the scheduling order.

Furthermore, the circuit court rejected Ms. Magyar's contention that she was prejudiced by the non-settling defendants' failure to inform her of their intent to call Dr. Proctor as a trial witness. *See Milw. Rescue Mission,* 161 Wis. 2d at 490.

exercise of discretion. *Hutnik*, 39 Wis. 2d at 763. We conclude that the circuit court's order to exclude Dr. Proctor from testifying at trial was an erroneous exercise of discretion. Accordingly, we reverse and, inasmuch as this evidence went solely to the issue of liability, remand for a new trial to determine liability.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 23. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I join both the majority opinion reversing the court of appeals' affirmance of the order of the circuit court and Justice Geske's concurrence. I write separately to point out only what I believe are some troubling aspects of the circuit court's ruling in this case.

¶ 24. On the morning of trial, the circuit court agreed to a settlement between one defendant, NSM, and the plaintiff, Ms. Magyar. The settlement was contingent on the exclusion of Dr. Proctor as a witness for any party at trial. The result of the circuit court's accession to this settlement was that the remaining defendants were made to go to trial without an infectious disease expert, contrary to their expectations.

¶ 25. I believe that absent extraordinary circumstances not present in this case, a circuit court should not agree to a settlement without giving the remaining parties ample opportunity to meet any surprises caused by the settlement.

¶ 26. I also note that our cases (some of which I authored for the court) may injudiciously read unfair surprise into § 904.03 as an element against which probative value is to be measured for exclusion of

evidence.[1] The present case points out how unfair surprise arises preliminarily to questions of weighing the admissibility of evidence for purposes of submission to the fact finder. In an appropriate case we may wish to reconsider our analyses of unfair surprise as an element of § 904.03.

¶ 27. I am authorized to state the Justice Janine P. Geske joins this concurrence.

¶ 28. JANINE P. GESKE, J. (*concurring*). I join the majority opinion. I write separately only to comment on why I believe the circuit court erroneously considered the "equity" of allowing the dismissal of NSM when deciding whether to exclude Dr. Proctor as a witness. When asked to give Ms. Magyar an advisory ruling on whether the other defendants might be allowed to call Dr. Proctor once NSM was no longer a party, the circuit court should have refused.

¶ 29. While NSM remained a party to this litigation, Dr. Proctor could have and would have been called as a witness. NSM had properly listed Dr. Proctor on its witness list. Ms. Magyar neither filed nor argued a motion *in limine* requesting that Dr. Proctor's testimony be limited to only those opinions he expressed in his earlier report. She never moved to strike Dr. Proctor as a witness for NSM based on prejudicial surprise of his new opinions.

---

[1] *See* Thomas H. Barland, Michael J. Brose & Susan R. Steingass, *The Wisconsin Rules of Evidence: A Courtroom Handbook*, pp. 8–1 to 8–10 (April 1997) (State Bar of Wisconsin) (discussing cases considering surprise in context of § 904.03). *See also* Judicial Council Committee's Note and Federal Advisory Committee's Note to § 904.03, 59 Wis. 2d R73-R75 (1973) (discussing surprise in context of Wisconsin and federal rules).

¶ 30. Instead, Ms. Magyar and NSM worked out a dismissal agreement conditioned upon an advisory opinion by the trial court. At the time Ms. Magyar requested the court's ruling, there was no issue to decide. NSM was still a party and Dr. Proctor was a properly scheduled witness. If NSM had ceased to be a party to the lawsuit, then the issue of whether another defendant could call Dr. Proctor as a witness would have been ripe for determination.

¶ 31. Because the trial court did not wait until the issue was properly presented, it inappropriately became distracted by considering the equities of a dismissal of NSM rather than simply weighing the factors described in *Fredrickson v. Louisville Ladder*, 52 Wis. 2d 776, 783 (1971). As a result, the court "erroneously excluded evidence that was highly relevant to the issue of the defendant's liability" (Majority op. at 307–08).

¶ 32. I am authorized to state that Chief Justice Shirley S. Abrahamson, Justice Donald W. Steinmetz, Justice William A. Bablitch, Justice Jon P. Wilcox, Justice Ann Walsh Bradley and Justice N. Patrick Crooks join this concurring opinion.