COURT OF APPEALS
DECISION
DATED AND FILED

April 14, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP206-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF115**

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

SHAFIA M. JONES,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Fond du Lac County: JOHN A. JORGENSEN, Judge. *Affirmed.*

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Shafia Jones appeals from a judgment of conviction. She argues that her conviction should be reversed on the basis that the State failed to preserve certain evidence, the court failed to strike for cause a racially biased prospective juror and Jones then had to use one of her own peremptory strikes to keep the prospective juror off of the jury, and/or the court erred in admitting certain other-acts evidence at trial. Jones fails to carry the day on any of these issues. We affirm.

Failure-to-Preserve Evidence

¶2 Jones was charged with assault by a prisoner with a bodily substance, in violation of WIS. STAT. § 946.43(2m)(a), and disorderly conduct, in violation of WIS. STAT. § 947.01, both as a repeater, in connection with a January 20, 2016 incident at the county jail in which she struck a staff member with a feminine pad that had been saturated with bodily fluid. Prior to trial, Jones moved to dismiss the assault-by-a-prisoner count on the basis that the pad had not been preserved so that it could be tested to determine whether or not it actually contained bodily fluid, as required for a conviction under § 946.43(2m)(a). The circuit court denied the motion on the basis that the pad constituted inculpatory, not exculpatory, evidence.

¶3 On appeal, Jones insists her due process rights were violated by the government's failure to preserve the pad and that the circuit court erred in denying her motion. We disagree.

¶4 In order to show that her due process rights were violated due to the failure of the government to preserve the pad, Jones bears the burden of demonstrating that the government (1) "failed to preserve" the pad, and the pad was "apparently exculpatory," or (2) "acted in bad faith by failing to preserve" the

pad, and the pad was "potentially exculpatory." *See **State v. Luedtke***, 2015 WI 42, ¶7, 362 Wis. 2d 1, 863 N.W.2d 592. "'Whether state action constitutes a violation of due process presents a question of law, which this court decides independently....' We uphold the circuit court's findings of historical fact unless they are clearly erroneous." ***Id.***, ¶37 (citation omitted).

¶5 In ***Luedtke***, the state laboratory that tested Luedtke's blood sample, which came back positive for restricted controlled substances and cocaine, destroyed the sample pursuant to standard protocol. ***Id.***, ¶¶13, 16. Luedtke, who was unable to test the sample prior to its destruction, sought to suppress the blood sample on that basis. ***Id.***, ¶¶17, 20. Our supreme court held that "[t]he fact that Luedtke's blood tested positive" for these substances "demonstrates that this blood was apparently *not* exculpatory." ***Id.***, ¶54 (emphasis added).

¶6 The same holds for this case. At the hearing on Jones' motion, the staff member struck by the feminine pad testified that as she approached Jones' section, she observed Jones "flooding her cell. There was, like, blood, feces, smell of urine coming out of there." The staff member further testified that the feminine pad Jones threw at her was "very heavy and wet" and "full of it would appear to be blood and feces *and smelled of urine* … and it *hit me in the upper right shoulder and splattered into my face*." (Emphasis added.) The circuit court determined that the pad was "inculpatory evidence," and with such a determination, it implicitly found the staff member's testimony believable.

¶7 While the staff member's sense of smell may not be as "scientific" as laboratory testing on blood samples, the smell of urine is readily recognized by most anyone. We note that the staff member's testimony indicates that not only did she recognize the smell of urine on the pad itself but also that it struck her on

the shoulder and "splattered into [her] face," thus she easily would have been able to observe that this particular urine smell was coming from the pad as opposed to being from the fluids on the floor coming out of Jones' cell.[1] We agree that the pad "was apparently not exculpatory," *see Luedtke*, 362 Wis. 2d 1, ¶54, or as the circuit court stated it, that the pad was "inculpatory" evidence. *See also State v. Pankow*, 144 Wis. 2d 23, 44, 422 N.W.2d 913 (Ct. App. 1988) ("Pankow's claim that defense examination would have produced exculpatory evidence is speculative. Due process does not require the state to preserve evidence that is merely potentially exculpatory.").

¶8 Jones then can only prevail on her failure-to-preserve-evidence issue if she has shown that the pad was "potentially exculpatory" and the government "acted in bad faith by failing to preserve" it. *Luedtke*, 362 Wis. 2d 1, ¶7. She has not shown this.

¶9 Since Jones chose not to testify, either at the evidentiary hearing on her motion or at trial, the staff member was the person singularly best positioned to testify to the nature of the substance with which the pad was soaked. Again, the staff member's testimony was that the pad "smelled of urine," which testimony was completely consistent with the report she filled out the day after the incident, in which she stated that she took off her uniform shirt after the incident "as it was wet and smelled of urine." To demonstrate bad faith by the government, Jones

---

[1] In her brief-in-chief, Jones states that this staff member's "report prepared the next day stated that *the pad* was soaked with an 'unknown substance.'" (Emphasis added.) This is incorrect. That report, which was admitted into evidence at the evidentiary hearing on Jones' motion, does state that the substance *on the floor* of Jones' cell was "unknown." However, the report also states that after being struck with the "soaked feminine pad" in her upper torso area, which soaked pad "splattered in [her] face, hair, shirt and pants," the staff member "went to Main Control to take [her] uniform shirt off as it was wet *and smelled of urine*." (Emphasis added.)

must show that "(1) the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve; *and* (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence." *See id.*, ¶46 (emphasis added; citation omitted). We need not address the second of these prongs as Jones has failed to satisfy the first—that "the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve." *See id.* (citation omitted). The only awareness related to the evidentiary value or usefulness of the pad that the officers would have had would have been an awareness that it had inculpatory, not exculpatory, value, as the circuit court noted.

Denial of Motion to Strike Prospective Juror for Cause

¶10 Jones next asserts she is entitled to a new trial because the circuit court declined to strike for cause a prospective juror who indicated she harbored some racial bias. Jones is not entitled to a new trial.

¶11 The relevant voir dire discussion related to the prospective juror is as follows:

> [Defense counsel:] Does anyone, you know, being completely candid, does the fact that my client is black cause anyone to have a negative attitude towards her? It's no fault of your own, no fault of prejudice, but do you think it would impact your judgment of her, the fact that she's black? Ms. S.B[.]
>
> [Prospective Juror S.B.:] About ten years ago, we had a burglar in our house, and as fate would have it, he was the gentleman who just died in police custody a couple weeks ago, same man. And I have to say that it kind of gives you a little bit of a start to begin to wonder.
>
> [Defense counsel:] Okay. So do you think you would have a hard time to be impartial and fair to my client?

5

[Prospective Juror S.B.:] I would certainly try. Like the lady said, I would try to do my best, but I'm kind of old school, you know, definitely the oldest one here and—

[Defense counsel:] And I appreciate your candor on this issue. This is an important issue. So I guess, Your Honor, at this point, I would move for cause.

The Court: So Ms. S.B[.], just like I told the other juror, you know, the goal here—we all have prejudice to a certain degree against people, professions, foods. I mean, we all have some prejudices or biases. And our goal here is to get jurors that will keep it out as best as they can and make their decision of guilt or innocence only—or guilty or not guilty, only based upon the facts that you learn them here today and tomorrow. So the only evidence you are to consider, I will tell you later in the jury instructions, is the sworn testimony or physical evidence that is presented today and judge them and the credibility of witnesses based upon what you see. So the question is can you keep out your bias or prejudice and just judge the facts as you learn them here today and tomorrow?

[Prospective Juror S.B.:] I would try. I definitely would try and do my best.

The Court: Mr. Edelstein.

[Prosecutor:] I share defense concern, but I don't think the answer merits recusal for cause.

The Court: So at this point, she will remain.

Out of the presence of jurors, the court subsequently explained its reasoning in declining to strike this, and another, prospective juror for cause.

The Court: She did express some race issues or concerns that she may have. You know, the bottom line, though, is this is the same for both the jurors, the standard is whether they give an affirmative response notwithstanding the juror could decide the case fairly and impartially with the evidence presented. Each of them gave an affirmative response they would try their best, and that's really what everyone here is trying to do is try their best because as I indicated, I think we all bring with us some baggage of one degree or another. I found nothing in the record of each of those jurors or their statements made that on the face of it or even through their statements would show there was a

> reason for cause. Each of them met the standard which is that they would try their best to be fair and impartial jurors which is what we ask of them.

Jones subsequently used one of her five peremptory strikes to keep S.B. off the jury.

¶12 We presume that prospective jurors are impartial. *State v. Funk*, 2011 WI 62, ¶31, 335 Wis. 2d 369, 799 N.W.2d 421. "The party challenging a juror's impartiality bears the burden of rebutting this presumption and proving bias." *Id.* In assessing bias, we will "defer to the trial court's better position to assess the prospective juror's credibility and honesty." *State v. Jimmie R.R.*, 2000 WI App 5, ¶30, 232 Wis. 2d 138, 606 N.W.2d 196.

¶13 Wisconsin courts recognize three types of juror bias: (1) statutory bias, (2) subjective bias, and (3) objective bias. *State v. Faucher*, 227 Wis. 2d 700, 716, 596 N.W.2d 770 (1999). Jones insists prospective juror S.B. was both subjectively and objectively biased. We conclude that Jones did not overcome the presumption that S.B. could serve as an impartial juror; thus, the circuit court did not err in declining to strike her for cause.

¶14 Subjective bias "is revealed through the words and the demeanor of the prospective juror." *Id.* at 717. In considering whether a prospective juror was subjectively biased, we must inquire as to "whether the record reflects that the juror is a reasonable person who is sincerely willing to set aside any opinion or prior knowledge" he or she might have. *State v. Kiernan*, 227 Wis. 2d 736, 745, 596 N.W.2d 760 (1999). We have explained:

> [I]t is clear that "a prospective juror need not respond to voir dire questions with unequivocal declarations of impartiality." It is not just the juror's words that are important. The manner in which the juror says the words and the body language he or she exhibits while answering

> speak volumes—volumes that are not transmitted to a reviewing court via the cold record. Our inability to review demeanor and thus assess sincerity is precisely why we leave the determination of subjective bias to the circuit court. Thus, when reviewing a circuit court's decision on subjective bias, we do not focus on particular, isolated words the juror used. Rather, we look at the record as a whole, using a very deferential lens, to determine if it supports the circuit court's conclusion.

*State v. Oswald*, 2000 WI App 3, ¶6, 232 Wis. 2d 103, 606 N.W.2d 238 (1999) (citations omitted). "[We] will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous." *Faucher*, 227 Wis. 2d at 718.

¶15 When asked whether the fact that Jones is black would impact her judgment in the case, S.B. candidly indicated that ten years earlier she had been the victim of a burglary. She added that the perpetrator, whom we assume she was indicating was black, died in police custody just a few weeks before her appearance as a prospective juror. She added that "it kind of gives you a little bit of a start to begin to wonder."

¶16 It is not entirely clear exactly what S.B. may have been "wonder[ing]." But, because counsel's question related to whether Jones' race as a black person "would impact [S.B.'s] judgment of [Jones]" and then S.B. responded by appearing to connect Jones' race with another person who burglarized S.B.'s house ten years earlier and at the time of Jones' trial this person had recently been again in police custody, we will accept as accurate Jones' assertion in her brief-in-chief that S.B. was "wonder[ing]" "whether Black people have a proclivity for criminal conduct." Counsel followed up with "[s]o do you think you would have a hard time to be impartial and fair to my client?" S.B.

8

responded, "I would certainly try … to do my best, but I'm kind of old school, you know." Jones moved to strike S.B. for cause.

¶17    Before ruling on the motion, the circuit court pressed S.B. further:

> [W]e all have some prejudices or biases. And our goal here is to get jurors that will keep it out as best as they can and make their decision of … guilty or not guilty only based upon the facts [as] you learn them here today and tomorrow. So the only evidence you are to consider … is the sworn testimony or physical evidence that is presented today and judge them and the credibility of witnesses based upon what you see. So the question is can you keep out your bias or prejudice and just judge the facts as you learn them here today and tomorrow?

S.B. responded: "I would try. I definitely would try and do my best." Outside the presence of the jury, the court explained that it declined to strike S.B. for cause because she "gave an affirmative response" that she would "try [her] best" to be fair and impartial and judge the case based on the facts presented at trial.

¶18    Unlike us, the circuit court was in the position to hear S.B.'s tone of voice, observe her demeanor including body language, and ultimately assess her sincerity. Unequivocal words of impartiality from a prospective juror are not required. *See* **State v. Gutierrez**, 2020 WI 52, ¶¶40-42, 394 Wis. 2d 799, 943 N.W.2d 870 (in case involving the sexual assault of a child, the presumption of impartiality for prospective juror was not overcome by her "uncertain" statement of "I don't know if I could be impartial"). The court apparently found S.B. sincere and believed that the presumption that she could be impartial had not been overcome. Jones has not convinced us that the court clearly erred in this determination and in declining to strike S.B. based upon subjective bias.

¶19    Regarding objective bias, we have stated that "exclusion of a juror for *objective* bias requires a direct, critical, personal connection between the

9

individual juror and crucial evidence or a dispositive issue in the case to be tried or the juror's intractable negative attitude toward the justice system in general." *Oswald*, 232 Wis. 2d 103, ¶8 (emphasis added). "A juror is objectively biased if a reasonable person in the juror's position could not set aside his or her prior opinion or knowledge and be impartial." *Sheboygan Cnty. HHS v. K.N.L.*, No. 2017AP2413, unpublished slip op. ¶16 (WI App Aug. 22, 2018) (citing *Faucher*, 227 Wis. 2d at 718-19). Objective bias presents a mixed question of fact and law. *Funk*, 335 Wis. 2d 369, ¶30. "[A] circuit court's findings regarding the facts and circumstances surrounding *voir dire* and the case will be upheld unless they are clearly erroneous. Whether those facts fulfill the legal standard of objective bias is a question of law." *Id.* (alterations in original) (quoting *Faucher*, 227 Wis. 2d at 720). "[W]e will reverse a circuit court's determination in regard to objective bias 'only if as a matter of law a reasonable judge could not have reached such a conclusion.'" *Funk*, 335 Wis. 2d 369, ¶30 (quoting *Faucher*, 227 Wis. 2d at 720-21). As our supreme court has stated:

> The circuit court is particularly well-positioned to make a determination of objective bias, and it has special competence in this area. It is intimately familiar with the voir dire proceeding, and is best situated to reflect upon the prospective juror's subjective state of mind which is relevant as well to the determination of objective bias. We therefore give weight to the court's conclusion that a prospective juror is or is not objectively biased.

*State v. Lindell*, 2001 WI 108, ¶39, 245 Wis. 2d 689, 629 N.W.2d 223 (quoting *Faucher*, 227 Wis. 2d at 720-21). For objective bias, there is a "higher standard of review than the clearly erroneous standard but still very deferential to the trial court's conclusions." *Oswald*, 232 Wis. 2d 103, ¶5.

¶20 As far as the record indicates, S.B. had neither a "direct, critical, personal connection" with "crucial evidence or a dispositive issue in the case" nor

an "intractable negative attitude toward the justice system in general." ***Oswald***, 232 Wis. 2d 103, ¶8. Furthermore, we are not convinced that a reasonable person with S.B.'s assumed prior opinion could not set that aside, listen to the evidence fairly, and judge the case impartiality. *See* ***K.N.L.***, No. 2017AP2413, ¶16 (citing ***Faucher***, 227 Wis. 2d at 718-19). S.B. indicated that she "definitely would try," and the court found this sincere and believed she could be impartial. We cannot say that the court erred in this regard.

Prior Acts

¶21 Jones also contends that the circuit court erred in permitting the State to show the jury videos of two November 10, 2015 incidents involving Jones, which also occurred at the jail. As Jones explains it, one video shows her "thr[owing] a number of items out of her cell door, and smear[ing] a soiled feminine pad on the window of her cell door," and the other video shows her later that day again "smear[ing] a feminine pad on the cell window," this time in an isolation cell. The State brought a pretrial motion to introduce these incidents and show these two videos at trial for the purpose of proving "Motive/Intent/Plan/Preparation" and "Knowledge/Absence of Mistake." The court held a hearing on and ultimately granted the State's request.

¶22 We will uphold a circuit court's ruling on the admission or exclusion of evidence for trial unless the court erroneously exercised its discretion. ***State v. Wilson***, 2015 WI 48, ¶47, 362 Wis. 2d 193, 864 N.W.2d 52. A court properly exercises its discretion if it "examines the relevant facts, applies a proper standard of law, and reaches a reasonable conclusion using a demonstrated rational process." ***Magyar v. Wisconsin Health Care Liab. Ins. Plan***, 211 Wis. 2d 296, 302, 564 N.W.2d 766 (1997).

11

¶23 "Other acts" evidence, such as the instances portrayed in the videos in this case, "may be admitted if: (1) offered for an acceptable purpose under [WIS. STAT.] § 904.04(2); (2) relevant under [WIS. STAT.] § 904.01; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice, confusion, or delay under [WIS. STAT.] § 904.03." *See Gutierrez*, 394 Wis. 2d 799, ¶29 (citing *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998)). Our supreme court has stated that

> [t]he party seeking to admit the other-acts evidence bears the burden of establishing that the first two prongs are met by a preponderance of the evidence. Once the proponent of the other-acts evidence establishes the first two prongs of the test, the burden shifts to the party opposing the admission of the other-acts evidence to show that the probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice.

*State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399 (citations omitted). In this case, we see no error by the court.

¶24 In granting the State's motion with regard to these two incidents, the circuit court explained the "*Sullivan* analysis" and applied it to each "other act" that the State was seeking to use at trial. The court made the following relevant comments in its ruling.

> The charges here are prisoner expelling bodily fluids and disorderly conduct. The prisoner in expelling bodily fluids does have an act or element of intention that, number one, that she intentionally did … the act being throwing an object or bodily fluids, and it does have the issue of intent, what is the intent of the actor when they throw this object and … that it did come in contact with another person. And again, another intent to abuse or harass or intimidate or frighten another individual.
>
> ….
>
> [A]ll of these other [acts] are fairly recent, within a little over two months … of [the incident at issue in this case].

So one consideration is that these actions here could provide context to the jurors about the nature of the relationship and whether it's going well, and therefore, it makes no sense on this date and time that she would like to harass, intimidate, or frighten the jailers. Because certainly it wouldn't make sense that if the relationship is going well and there's been no issues, then why on January 20th of 2016 would all of a sudden Ms. Jones act in a manner to abuse or harass or intimidate or frighten an individual, the jailer, in this circumstance….

.…

In that first [November 10, 2015] incident, the allegations that she wanted to present is she used feminine hygiene product within the incident to cause a disturbance. That she threw food, caused a disturbance. [The prosecutor] wants to get into that and it would show motive, intent, absence of mistake. And here again is an example where Ms. Jones is angry, not getting what she wants. And when she does, she does throw items in order to, quote unquote, punish the jailers because clearly she's not going to be picking the stuff up or she's not going to be dealing with the mess that she has caused. I mean, there has to be a reason when she's throwing these things, a reason for her to do that and it could assist the jurors knowing the reason she's doing this is to harass, abuse, or intimidate, just like the charges that … come from the January 20th of 2016 date. So I'm going to find that this November 10, 2015 incident does come in in that it goes to her motive for why she's throwing things. It goes to her intent of is she trying to abuse or harass or intimidate the jailers when they do something that she does not like. And to a degree, it goes to absence of mistake, was this an intentional act on her part when she threw the items on January 20th, the fact that she was throwing things in the past could provide jurors context as to was this a mistake when she threw the items on January 20th. So, again, November 10th, the first incident, comes in.

[Related to the second November 10, 2015 incident,] they are trying to, it looks like, move Ms. Jones or the officers trying to control Ms. Jones's behavior and move her from one location to the other. She struggled with them, she attempted to physically harm the officers, and, you know, the jurors may not have that in their wheelhouse that people do that, that people act out intentionally to try to cause harm to the officers, specifically jailers, and in this case, again, it's an example of when Ms. Jones is angry that she, in that case specifically, is proven tried to cause harm to the

> jailers and so that would go to intent of Ms. Jones. And again, puts this relationship in context to when things are not going well, Ms. Jones acts out in a manner in which to control the individuals around her. So I'm going to allow November 10, 2015, in for other acts because it goes to intent, it goes to her motive, and absence of mistake.

The court further concluded that the probative value of these other acts was not substantially outweighed by the danger of unfair prejudice. Related to this, the court stated that

> obviously she was in jail on this January 20th date and so the fact that she was in jail a month or two before certainly doesn't add much to the prejudice. The fact that the similar actions … doesn't add to the danger of unfair prejudice. … [T]hese other acts, as suggested by [the prosecutor], are in the same location [the jail], similar-type actions, and very recent in time…. [So] for the State to bring other instances in the same location during a recent time period, really doesn't shock the conscience of the jurors that she's in jail, causing a disturbance, because they are going to learn that anyways from the January 20th incident.

¶25 Of seven "other acts" that the State was requesting to use at trial and that the court considered at this motion hearing, the court ruled in favor of the State with regard to the two November 10 incidents, as well as two additional other acts. However, the court then ruled that it would only allow the State to use two of those four other acts at trial because "[u]nder [WIS. STAT. §] 904.03, the court can limit cumulative evidence from coming in and I think that two other acts evidence is sufficient to allow the State to use and anything above and beyond that would be cumulative and unnecessary. So [the prosecutor] can analyze that and determine which two instances he plans to use at the jury trial."

¶26 Reviewing the circuit court's comments and reasoning, it is clear the court "examine[d] the relevant facts, applie[d] a proper standard of law, and reache[d] a reasonable conclusion using a demonstrated rational process." *See*

14

*Magyar*, 211 Wis. 2d 296, 302. The court noted that the State was offering these other acts for the acceptable purposes of showing Jones' motive and intent, as well as an absence of mistake. The court concluded that the acts were proper to admit for those purposes as well as providing context for the January 20, 2016 incident at issue in this case. *See* WIS. STAT. § 904.04(2)(a) (acceptable purposes for other-acts evidence include motive, intent and absence of mistake); *see also **Gutierrez***, 394 Wis. 2d 799, ¶31 ("Context and background, while not expressly listed in … § 904.04(2)(a), can also be acceptable purposes."). The court clearly explained how these other acts were relevant to issues in the case, and it also properly concluded that Jones had not met her burden to show that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. The court could have stopped there, but it went the "extra mile" towards fairness by restricting the State to only using two of the four other-acts incidents that the court ruled would otherwise be admissible. Jones has failed to satisfy her burden of demonstrating to us on appeal that the circuit court erred. *See **Gaethke v. Pozder***, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("[O]n appeal 'it is the burden of the appellant to demonstrate that the [circuit] court erred.'" (second alteration in original; citation omitted)).

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.