260 NORTH 12TH STREET, LLC and
Basil E. Ryan, Jr., Plaintiffs-Appellants,†

v.

STATE of Wisconsin DEPARTMENT OF TRANSPORTATION,
Defendant-Respondent.

Court of Appeals

No. 2009AP1557. *Submitted on briefs June 1, 2010.*
*—Decided September 14, 2010.*

2010 WI App 138

(Also reported in 792 N.W.2d 572.)

† Petition for Review granted 3/16/11.

749

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. KESSLER, J. In this condemnation case, a jury awarded 260 North 12th Street, LLC, and Basil E. Ryan, Jr. (collectively, "Ryan"), $2,001,725 for property

that was taken pursuant to eminent domain as part of a highway construction project. This was more than the $1,348,000 that was originally granted to Ryan, but less than the nearly $3.5 million that Ryan was seeking. Ryan seeks a new trial and presents four arguments in favor of granting a new trial: (1) evidence concerning environmental contamination and remediation should not have been admitted; (2) Ryan's two expert witnesses should not have been precluded from testifying; (3) the trial court erroneously admitted "speculative and inadmissible" evidence concerning remediation; and (4) Ryan's proffered jury instructions should have been used instead of the instructions given. (Capitalization and bolding omitted.) We reject his arguments and affirm the judgment.

## BACKGROUND

¶ 2. The Wisconsin Department of Transportation ("DOT") wanted to acquire a parcel of land owned by Ryan that was located near a planned freeway interchange construction project in downtown Milwaukee. The DOT supplied Ryan with an appraisal of his property. Ryan retained an expert, Lawrence R. Nicholson, who prepared an appraisal report on the value of Ryan's property as of February 24, 2005. The parties did not agree on the value of Ryan's property.

¶ 3. The DOT later obtained the property using the statutory condemnation process. Ryan was awarded $1,348,000 for the property on March 30, 2005. Ryan filed this action in the trial court pursuant to WIS. STAT. § 32.05(11) (2005–06),[2] appealing the amount of compensation he received.

---

[2] WISCONSIN STAT. § 32.05, entitled "Condemnation for sewers and transportation facilities," provides in relevant part:

¶ 4. The trial court, the Hon. Francis T. Wasielewski presiding, entered the first scheduling order on December 13, 2005 ("2005 Scheduling Order"). Among other matters, the 2005 Scheduling Order required Ryan to disclose all lay and expert witnesses, and produce a written report from each expert named, both by February 15, 2006, and required the DOT to make the same disclosures by May 1, 2006.[3] The 2005 Scheduling Order further provided: "**Witnesses not timely named and described shall not be called as witnesses at trial, except for good cause shown.**" (Bolding in original.)

¶ 5. In February 2006, pursuant to the 2005 Scheduling Order, Ryan filed his list of witnesses, which

> **(11)** ... The owner of any interest in the property condemned named in the basic award may ... within 2 years after the date of taking, appeal to the circuit court of the county wherein the property is located .... The clerk shall thereupon enter the appeal as an action pending in said court with the condemnee as plaintiff and the condemnor as defendant .... The sole issues to be tried shall be questions of title, if any, ... and *the amount of just compensation to be paid by condemnor.* It shall be tried by jury unless waived by both plaintiff and defendant.

(Emphasis added.)

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted. In this case, which included activity between 2005 and 2009, we reference the 2007–08 version of WIS. STAT. ch. 32, which was not amended in any way that affects our decision throughout the pendency of this case.

[3] The trial court subsequently approved a stipulation that extended by seven days the deadline for the DOT to file its witness list.

identified only two experts: Nicholson, who appraised the property on March 24, 2005, and a "Surveyor/ Engineer (to be named)" from "Kapur & Associates." Ryan's witness list also stated that he "reserve[d] the right . . . to name witnesses to be called in rebuttal" and "to call any witnesses whose testimony becomes necessary as a result of facts learned through discovery." In May 2006, the DOT filed its list of witnesses, which identified seventeen potential expert witnesses, including Scott L. MacWilliams, who appraised the property on May 3, 2006.

¶ 6. The 2005 Scheduling Order was amended several times over the next eighteen months. For instance, on May 31, 2006, the trial court approved a stipulation and order amending the 2005 Scheduling Order deadlines for completing discovery and other matters; however, there was no change to the already passed dates for disclosure of lay and expert witnesses. Later, on September 26, 2006, the trial court again modified the scheduling order, adjusting the dates of the pretrial conference, discovery completion and the pretrial report so that the parties could participate in mediation; however, there was no change to the already passed dates for disclosure of lay and expert witnesses. On April 13, 2007, the trial court issued an amended scheduling order which again modified the deadline for completing discovery, ordered Ryan to appear for his deposition, resolved other discovery issues and modified the dates for the pretrial conference and pretrial report. It did not make any change to the already passed deadlines to disclose lay and expert witnesses.

¶ 7. The Hon. Michael B. Brennan was assigned the case effective August 2007, due to judicial rotation. Shortly thereafter, the trial court was notified that Ryan's attorney intended to withdraw and Ryan would

be seeking new counsel. As a result, the trial court issued an order suspending the April 13, 2007 scheduling order, anticipating that Ryan would secure counsel and a new scheduling conference would be set. The trial court's order explicitly stated: "It is the present understanding of the [c]ourt that the deadlines for disclosure of lay and expert witnesses, which deadlines have been met in this matter, will not be reset at that new scheduling conference."

¶ 8.  On January 10, 2008, Ryan appeared in court without an attorney, but indicated that he anticipated securing counsel by the end of January. Judge Brennan entered a revised scheduling order that set deadlines for Ryan to respond to specific discovery requests and for both parties to file dispositive motions, complete discovery and submit final pretrial reports. The final pretrial was scheduled for July 9 and the jury trial was set for August 4. The January 10, 2008 scheduling order did not mention or alter the already expired deadlines for disclosing witnesses.

¶ 9.  Ryan secured legal counsel in March 2008. At the end of March the parties reached a stipulation pursuant to which Ryan would have about three more weeks to respond to discovery requests; the trial court approved the stipulation and amended the scheduling order accordingly. Once again, the amended order did not mention or alter the long-passed deadlines to name witnesses.

¶ 10.  On May 15, 2008, over two years after the parties filed their lists of expert witnesses, Ryan moved for partial summary judgment, seeking to exclude MacWilliams's appraisal and its references to remediation costs, on several grounds. First, Ryan argued that "contamination and remediation costs should not be allowable in condemnation proceedings as a matter of

law because of the separate statutory schemes address-ing those issues." Therefore, Ryan argued, MacWilliams's appraisal should be excluded at trial because it consid-ered potential contamination and remediation costs.[4] In the alternative, Ryan sought to exclude the appraisal's references to adjustments to the property's value that were based on remediation costs.

¶ 11. Second, Ryan asserted that some or all of MacWilliams's report should be excluded because it was based on speculation. Ryan argued that MacWilliams's methodology concerning a remediation cost discount was flawed. In support of this argument, Ryan relied on written opinions of two experts, Jason Messner and Joe Michaelchuck, who were retained by Ryan to review MacWilliams's site conditions adjustment and the envi-ronmental data, respectively.

¶ 12. Third, Ryan argued that if contamination and remediation evidence were to be admitted, it should be limited to $10,000, the amount of the deductible Ryan would have had to pay to clean up the property after receiving a Petroleum Environmental Cleanup Fund Award ("PECFA"). This argument was also premised on assertions made by Messner and Michaelchuck.

¶ 13. In response, the DOT moved to strike Mess-ner and Michaelchuck as witnesses in the case, as well as their written reports. The DOT argued that Messner and Michaelchuck were not disclosed as expert wit-nesses in Ryan's February 2006 witness list, and no subsequent scheduling order had extended the deadline to name expert witnesses. Indeed, the DOT noted that

---

[4] No remediation had been performed as of March 2005, so the contamination and remediation costs considered were esti-mates for future work.

Ryan had never even moved to amend a scheduling order to allow him leave to add witnesses to his existing witness list. The DOT also reminded the trial court that the court had explicitly stated in its August 2007 order "that the deadlines for disclosure of lay and expert witnesses, which deadlines have been met in this matter, will not be reset at that new scheduling conference."

¶ 14.   The trial court granted the DOT's motion to exclude Messner and Michaelchuck and their reports. It cited WIS. STAT. §§ 802.10 and 804.12, related to enforcement of scheduling and discovery orders. The trial court found that there would be "a substantial amount of prejudice to the [DOT], a minor amount of prejudice to [Ryan and] there is not good cause shown for relief from the scheduling order."

¶ 15.   Ryan subsequently renewed his motion for partial summary judgment, arguing that MacWilliams's appraisal should still be excluded from consideration because it considered environmental contamination and because it was speculative as to potential remediation costs. Ryan also moved for reconsideration of the trial court's decision excluding Messner and Michaelchuck.

¶ 16.   The trial court denied Ryan's motions for partial summary judgment and reconsideration. It held that evidence of environmental contamination and remediation costs was admissible in a trial to determine just compensation. With respect to MacWilliams's appraisal, the trial court rejected Ryan's argument that MacWilliams's estimates concerning remediation costs were speculative and lacked a proper foundation. However, the trial court told Ryan he could renew specific concerns about MacWilliams's report prior to trial, at which time the trial court would decide if any portion of MacWilliams's report should be excluded. Ultimately,

the trial court declined to exclude any portion of MacWilliams's report. It stated that Ryan's concerns about the report went to the weight of the testimony rather than its admissibility.

¶ 17.   At trial, the jury found that the fair market value of Ryan's property as of March 30, 2005, was $2,001,725. The trial court denied Ryan's subsequent motions for judgment notwithstanding the verdict and for a new trial—motions which included renewal of the arguments he made prior to trial—as well as a challenge to the jury instructions. Ultimately, judgment was entered in Ryan's favor, awarding him the difference between the jury verdict and the award of damages already paid, plus interest, $268,000 in attorney fees and $48,019.40 in costs. This appeal follows.

## DISCUSSION

¶ 18.   Ryan seeks a new trial and presents four arguments in favor of granting a new trial:   (1) evidence concerning environmental contamination and remediation costs should not have been admitted; (2) Ryan's two expert witnesses should not have been precluded from testifying; (3) the trial court erroneously admitted "speculative and inadmissible" evidence concerning remediation; and (4) Ryan's proffered jury instructions should have been used instead of the instructions given. (Capitalization and bolding omitted.) We consider each issue in turn.

### I. Admission of evidence of environmental pollution and related remediation costs.

¶ 19.   Ryan argues that "the effects of contamination and related remediation costs should not be con-

sidered in determining just compensation" in an eminent domain taking. (Capitalization and bolding omitted.) Thus, he argues, the trial court erred when it admitted this evidence. Ryan asserts that whether such evidence is admissible in Wisconsin has not previously been decided. The DOT agrees that no Wisconsin case has directly addressed this issue, but contends that WIS. STAT. § 32.09(5)(a), as well as case law and WIS JI—CIVIL 8100, provide authority to consider this evidence. We agree with the DOT.

¶ 20. A trial court's discretionary decision to admit evidence at trial is reviewed with deference. *See State v. Sullivan*, 216 Wis. 2d 768, 780–81, 576 N.W.2d 30 (1998) (admission of evidence is within the trial court's discretion and the appellate court will sustain an evidentiary ruling if it finds that the trial court "examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach"). However, the first issue presented is whether contamination and remediation evidence is generally admissible in Wisconsin eminent domain cases. Resolution of that issue requires us to interpret WIS. STAT. ch. 32, which presents a question of law that we review *de novo. See HSBC Realty Credit Corp. v. City of Glendale*, 2007 WI 94, ¶ 15, 303 Wis. 2d 1, 735 N.W.2d 77 ("Statutory interpretation presents a question of law that we review de novo.").

¶ 21. WISCONSIN STAT. § 32.09(5)(a)[5] establishes that in the case of taking the total property, the "just

---

[5] WISCONSIN STAT. § 32.09, which contains the rules governing determination of just compensation in eminent domain

compensation" which must be paid in all takings is "the fair market value of the property taken." The "[f]air market value is the sum a willing purchaser would pay to a willing seller for the property, taking into consideration the uses of the land." *City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the United States v. Redevelopment Auth. of the City of Milwaukee*, 2009 WI 84, ¶ 4, 319 Wis. 2d 553, 768 N.W.2d 749; *see also P.C. Monday Tea Co. v. Milwaukee Cnty. Expressway Comm'n*, 24 Wis. 2d 107, 112–13, 128 N.W.2d 631 (1964) (stating in a condemnation case that "[f]air market value is defined as that amount which can be realized on sale by an owner willing, but not compelled, to sell to a purchaser willing and able, but not obliged, to buy"). Consistent with these definitions, WIS JI—CIVIL 8100 directs jurors determining fair market value to "consider only the price for which the property would have sold on (date of evaluation) by a seller then willing, but not forced, to sell, to a buyer who was then willing and able, but not forced, to buy."

██

¶ 22.   Wisconsin case law makes clear that "any factor affecting the value of property that could influence a prospective buyer in his or her purchasing decision should be considered in the valuation of property in a condemnation proceeding." *See Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 16, 281 Wis. 2d 173, 696 N.W.2d 194. Thus, the trier of fact is to consider every element which would be considered by the buyer and the seller in the marketplace in setting the price for the subject property on the date of taking. *See Ken-Crete Prods. Co. v. State Highway Comm'n*, 24 Wis. 2d

---

takings, provides in relevant part:   "(5)(a) In the case of a total taking the condemnor shall pay the fair market value of the property taken."

355, 360, 129 N.W.2d 130 (1964) (holding that Wisconsin law is consistent with the proposition that " '[a]ll elements of value which are inherent in the property merit consideration in the valuation process' ") (quoting 4 Nichols, *Eminent Domain* § 12.1 at 4 (3d ed. 1962)).

¶ 23.  Based on these statutes, jury instructions and cases, we conclude that evidence of contamination and related remediation costs is admissible in eminent domain cases in Wisconsin.[6] Environmental contamination and the need to remediate the contamination is relevant to fair market value and, therefore, it is relevant to a determination of just compensation pursuant to WIS. STAT. § 32.09(5)(a).

¶ 24.  Although our conclusion that evidence of contamination and related remediation costs is admissible in eminent domain cases in Wisconsin is based on existing Wisconsin law and statutes, we note that our conclusion is also consistent with the "majority rule" in the United States. *See* 4 *Nichols on Eminent Domain* § 13.10 at 13–96 (3d ed. 2007) ("The majority view is to allow evidence of contamination and cost of cleanup to be admitted in an eminent domain proceeding.") (footnote omitted); Andrea L. Reed, Note, *Cleaning Up Condemnation Proceedings:  Legislative and Judicial Solutions to the Dilemma of Admitting Contamination Evidence,* 93 IOWA L. REV. 1135, 1152–53 (2008) ("The majority of states that have adjudicated the issue admit evidence of contamination under the premise that market value is the best measure of just compensation and

---

[6] The admission of evidence in a particular case is, of course, still guided by the rules of evidence. There may be cases where a trial court exercises its discretion to exclude evidence based on those rules.

contamination is relevant to that market value."); *see also Northeast Ct. Econ. Alliance v. ATC P'ship*, 776 A.2d 1068 (Conn. 2001); *Silver Creek Drain Dist. v. Extrusions Div., Inc.*, 663 N.W.2d 436 (Mich. 2003).

¶ 25.   Because evidence of contamination and related remediation costs is admissible in Wisconsin, the trial court "applied a proper standard of law" and did not erroneously exercise its discretion when it admitted the evidence. *See Sullivan*, 216 Wis. 2d at 780.

## II. Exclusion of two of Ryan's expert witnesses.

¶ 26.   The trial court excluded Messner and Michaelchuck as witnesses, as well as their written reports, based on Ryan's failure to name them as expert witnesses by February 2006, as required by the 2005 Scheduling Order. Ryan argues that the trial court erroneously exercised its discretion when it excluded them. Ryan argues that he did not violate the 2005 Scheduling Order because: Messner and Michaelchuck were to be rebuttal witnesses; the 2005 Scheduling Order was "silent as to rebuttal witnesses"; and Ryan reserved the right to name rebuttal witnesses when he filed his witness list. Ryan also contends that the trial court failed to consider the probative value of the proffered witnesses' testimony.

¶ 27.   "It is well established that a trial court has both statutory and inherent authority to sanction a party for failing to obey a court order." *Hefty v. Strickhouser*, 2008 WI 96, ¶ 71, 312 Wis. 2d 530, 752 N.W.2d 820. Such authority is essential to the trial court's ability to enforce its orders and " 'ensure prompt disposition of lawsuits.' " *Burnett v. Alt*, 224 Wis. 2d 72, 114, 589 N.W.2d 21 (1999) (citation omitted). We review a

trial court's decision to sanction a party using the erroneous exercise of discretion standard. *See Hefty*, 312 Wis. 2d 530, ¶ 71. *Hefty* explained:

> The [trial] court's discretionary decision to sanction a party will be upheld if the court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. The question is not whether this court would have granted the same sanction if it had decided the original matter; it is whether the [trial] court erroneously exercised its discretion when it made its decision.

*Id.* (citations omitted).

██ ██

¶ 28.   At issue in this case is Ryan's attempt to call Messner and Michaelchuck as witnesses at trial, and to rely on their written reports, even though they were not named as expert witnesses within the time allowed by the 2005 Scheduling Order. "Litigants are expected to follow [trial] court scheduling orders. Failure to do so is subject to sanction at the discretion of the [trial] court." *Id.*, ¶ 76 (citing WIS. STAT. § 802.10(7)[7]). Pursuant to WIS. STAT. § 805.03,[8] "a court may make such orders 'as are just' . . . where a party fails to obey any court order." *Hefty*, 312 Wis. 2d 530, ¶ 74. Denial of the request to add an expert witness after the deadline set in a scheduling order can be a reasonable sanction for

---

[7] WISCONSIN STAT. § 802.10(7) provides: "SANCTIONS. Violations of a scheduling or pretrial order are subject to ss. 802.05, 804.12 and 805.03."

[8] WISCONSIN STAT. § 805.03 provides in relevant part: "For failure of . . . any party to . . . obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a)."

failing to abide by the scheduling order. *See Magyar v. Wisconsin Health Care Liab. Ins. Plan*, 211 Wis. 2d 296, 308 n.1, 564 N.W.2d 766 (1997) ("Exclusion of a witness is, under the appropriate circumstances, a means of sanctioning a party for its failure to comply with a scheduling order.") (citing *Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991)); *State v. Ronald L. M.*, 185 Wis. 2d 452, 460–61, 518 N.W.2d 270 (Ct. App. 1994) (upholding trial court's decision to exclude party's attempt to add expert witness where deadline for disclosing experts had passed).

¶ 29.  As noted, it is undisputed that Ryan failed to name Messner and Michaelchuck as expert witnesses by February 2006, even though the 2005 Scheduling Order stated that witnesses who were not timely named could not be called at trial, except if good cause was shown. We begin our analysis by addressing Ryan's arguments that he did not violate the 2005 Scheduling Order because Messner and Michaelchuck were to be rebuttal witnesses, the scheduling order was "silent as to rebuttal witnesses" and Ryan reserved the right to name rebuttal witnesses when he filed his witness list. The trial court was not persuaded by those arguments and neither are we.

¶ 30.  First, like the trial court we disagree that Messner and Michaelchuck's testimony would have provided "rebuttal" testimony. As the trial court observed, because Ryan had the burden of proof to establish the property's value, the proposed testimony was more properly characterized as testimony relevant to Ryan's case in chief. Specifically, whether and how the jury should consider environmental contamination and remediation costs was an issue central to Ryan's burden to establish the fair market value of the property.

¶ 31.   Next, even if Messner and Michaelchuck's testimony could be considered "rebuttal" testimony in any way, we agree with the trial court that neither the 2005 Scheduling Order nor subsequent scheduling orders made "a distinction between trial and rebuttal witnesses." The trial court explained that no distinction was made because the courts wish to abide by the "overarching princip[le] of no trial by ambush." Further, the fact that Ryan included a rebuttal witness on his witness list that he filed in February 2006 belies his assertion that he did not believe the 2005 Scheduling Order applied to rebuttal witnesses.

¶ 32.   We also reject Ryan's assertion that the language he included in his February 2006 witness list reserving the right to call additional witnesses excused him from compliance with the trial court's 2005 Scheduling Order. A party cannot unilaterally extend the deadline to abide by a scheduling order simply by stating that it "reserves the right" to do so. *See Estate of Hegarty v. Beauchaine*, 2006 WI App 248, ¶ 188, 297 Wis. 2d 70, 727 N.W.2d 857 (rejecting party's claim that it could effectively ignore a scheduling order by expressly reserving in its pretrial report the right to name additional witnesses, because such a reservation of rights "entirely defeats the very purpose of the witness list requirement"). Indeed, the 2005 Scheduling Order provided that even stipulations between the parties to extend the time limits had to be approved by the trial court.

¶ 33.   For these reasons, we agree with the trial court that Ryan violated the 2005 Scheduling Order by not naming these expert witnesses on time. Next, we consider whether the trial court erroneously exercised

its discretion when it sanctioned Ryan by not allowing him to add Messner and Michaelchuck as witnesses two months before the scheduled date of trial.

¶ 34. In its decision granting the DOT's motion to exclude Messner and Michaelchuck, the trial court carefully and thoroughly explained why it found Ryan had not shown good cause to call the undisclosed witnesses and why it concluded that the DOT's motion should be granted. The trial court acknowledged both parties' agreement that the court had "the authority to patrol the scheduling order and ensure that it's complied with and that there can be sanctions including exclusion of witnesses, et cetera if those are not complied with." The trial court balanced Ryan's assertion that the two witnesses were significant to his ability to obtain just compensation against whether good cause had been shown to excuse non-compliance with the 2005 Scheduling Order. In making that determination, the trial court also considered prejudice to the DOT and the impact on the trial court's calendar if the new expert witnesses were added so close to trial.

¶ 35. The trial court observed that there had never been "a motion from [Ryan] for relief from the scheduling order" so that he could name new witnesses. If such a motion had been timely filed, the trial court pointed out, the DOT "would've had an opportunity to respond" and the matter could have been resolved sooner before trial. The trial court described Ryan's original witness list as comprehensive, done with an eye towards trial, "which is why it was preserved in that August, 2007, order." The trial court noted that when Ryan informed the trial court that he intended to seek new counsel in August 2007, the parties agreed "that the witnesses are not going to change," because the case had been pending for more than two years and it was

767

"important for the [c]ourt to not let it backslide." To memorialize the decision that the witness lists would not be amended, the trial court issued the August 2007 amended scheduling order indicating that no new witnesses would be added.

¶ 36. The trial court noted that the expert Ryan had named in February 2006, Nicholson, had already been deposed,[9] and that the DOT's understanding of the case was based on Nicholson's answers. The trial court continued:

> [J]ust because the information that is proffered by the new witnesses, Messner and Michaelchuck, is relevant, that . . . doesn't necessarily [rise] to the level of good cause. Here it would be something more [of a] preference rather than relevance.
>
> . . . [P]revious opinion testimony proffered on behalf of [Ryan] went to the issues at trial. It's just it's not the opinion testimony that [Ryan's] new counsel wants to put on, and what the [c]ourt has to be satisfied . . . with . . . is that there would be some kind of good cause as to why Mr. Messner or Mr. Michaelchuck should be allowed to offer these opinions notwithstanding the fact that it's outside the scheduling order . . . .
>
> In terms of good cause, I see some minor prejudice to [Ryan], specifically [Messner and Michaelchuck are] not the same witness[es] named by the former counsel, but that prejudice is, I think, vitiated . . . in part by the fact that [Ryan] does have experts, named those experts, and they're part of the witness list.

¶ 37. The trial court also discussed prejudice to DOT, noting that "scheduling orders are done in the

---

[9] Indeed, Nicholson was deposed nearly two years earlier, on July 12, 2006. In that deposition, Nicholson testified about remediation costs in response to questions about contamination and remediation.

768

sequential manner that they are . . . [in order] to eliminate prejudice from both sides." The trial court noted that the pretrial was going to take place in just four weeks, on July 9, 2008, and that an August 2008 trial date had been established. The trial court found:

> I see here a substantial amount of prejudice to the defense. The discovery was proceeding in a sequential manner, now we're completely off of that sequential manner as a result of Ryan's new lawyers wanting to name a new expert. These individuals have not been disclosed. Discovery closes soon, pretrial reports are due soon, and strategically with regard to this environmental issue the [DOT] had been defending the case in a certain manner and now it would have to defend the case in a completely different manner notwithstanding the fact that the [DOT] here followed the scheduling order and [Ryan is] seeking to do something outside of the scheduling order.
>
> . . . [I]n terms of a quantum it's much more prejudice to the [DOT] than it is to [Ryan].
>
> . . . .
>
> . . . To the extent that there is prejudice to [Ryan], it would be minor. It is also prejudice that ultimately may be rooted in Mr. Ryan's decisions with regard to when to hire counsel, not who to hire.

¶ 38.   The trial court granted the DOT's motion to preclude testimony from or reports by the newly disclosed expert witnesses. The trial court also found that Ryan had not shown good cause to modify the 2005 Scheduling Order concerning disclosure of expert witnesses. We conclude that the trial court's discretionary decision was reasonable. The trial court "examined the relevant facts, applied a proper standard of law, and,

769

using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *See Hefty*, 312 Wis. 2d 530, ¶ 71.

## III. Whether MacWilliams's appraisal concerning contamination and remediation costs should have been excluded because it was speculative.

¶ 39. Prior to trial, Ryan sought to exclude MacWilliams's appraisal on grounds that it was speculative. The trial court denied the request, concluding that Ryan could challenge MacWilliams's methodology and conclusions during cross-examination at trial. It stated that Ryan's concerns about the report went to the weight of the testimony rather than its admissibility.

¶ 40. On appeal, Ryan complains about the admission of MacWilliams's opinion, including his references to remediation cost estimates that came from a hazardous materials engineer. In response, the DOT provides a detailed explanation of how the opinions and estimates were not speculative. We decline to weigh in on the parties' debate of the details and merits of MacWilliams's opinion and testimony, especially where Ryan has not provided any record references to when and how the trial court was asked to evaluate these specific issues and how it ruled. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶ 10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 (appellate court has "no duty to scour the record to review arguments unaccompanied by adequate record citation"). Rather, we are satisfied that MacWilliams's testimony was admissible and that, as the trial court noted, Ryan's challenges go to its weight rather than its admissibility.

¶ 41. As the DOT explains, "The law in Wisconsin on the admissibility of expert testimony is that the [c]ourt makes the initial determination as to whether the individual is qualified as an expert. Issues of credibility and disputes between the experts are generally left to the jury." We recognized these principles in *Hoekstra v. Guardian Pipeline, LLC*, 2006 WI App 245, 298 Wis. 2d 165, 726 N.W.2d 648:

> The admissibility of expert evidence is left to the sound discretion of the trial court. Expert testimony is admissible if the witness is qualified as an expert and has specialized knowledge that is relevant. Expert testimony is relevant if it assists the trier of fact in understanding the evidence or in determining a fact at issue. The relevance of an expert's testimony turns on the probative value of that testimony.... [E]xpert testimony will be excluded only if the testimony is superfluous or a waste of time. The reliability of an expert's testimony is a credibility determination to be made by the fact finder. Evidence given by a qualified expert is admissible regardless of the underlying theory. The fundamental determination of admissibility comes at the time the witness is qualified as an expert. We will sustain a court's evidentiary rulings if the court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion.

*Id.*, ¶ 14 (citations and internal quotation marks omitted). In this case, it does not appear that Ryan challenged MacWilliams's qualifications as an expert and we discern no basis to conclude he should not have been allowed to testify. Whether MacWilliams's opinion was flawed was an issue for the jury to consider, after taking into account MacWilliams's testimony on both direct and cross-examination. *See id.*

## IV. Ryan's proffered jury instructions.

■

¶ 42. Ryan also seeks a new trial based on the trial court's failure to give the jury instructions he requested. A party is not entitled to a new trial because he did not get the jury instruction he preferred; rather, he must show that the instruction actually given misled the jury to his prejudice. *See Fischer v. Ganju*, 168 Wis. 2d 834, 849–50, 485 N.W.2d 10 (1992) ("trial court has broad discretion when instructing a jury" and a new trial is warranted "only if the error was prejudicial," meaning that "it probably and not merely possibly misled the jury").

¶ 43. Ryan's argument with respect to the jury instructions is conclusory and undeveloped. It comprises one paragraph on the last page of his brief, with no explanation of how the jury was misled by the instruction actually given, no case law citations or statutory citations and no explanation of the specific instruction(s) requested and denied. We consider this argument undeveloped and address it no further. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address issues that are inadequately briefed).

*By the Court.*—Judgment affirmed.