260 NORTH 12th STREET, LLC and
Basil E. Ryan, Jr.,
Plaintiffs-Appellants-Petitioners,

v.

STATE of Wisconsin Department of
Transportation, Defendant-Respondent.

Supreme Court

*No. 2009AP1557. Oral argument September 16, 2011.*
*—Decided December 22, 2011.*

2011 WI 103

(Also reported in 805 N.W.2d 381.)

For the plaintiffs-appellants-petitioners there were briefs by *Dan Biersdorf, E. Kelly Keady* and *Biersdorf & Associates, S.C.,* Milwaukee, and oral argument by *Dan Biersdorf.*

For the defendant-respondent there was a brief by *Charlotte Gibson, assistant attorney general,* with whom on the brief was *J.B. Van Hollen, attorney general* and oral argument by *Charlotte Gibson.*

An amicus curiae brief was filed by *Grant F. Langley, city attorney* and *Gregg C. Hagopian, assistant attorney general* for the City of Milwaukee.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, *260 North 12th Street, LLC v. Wisconsin DOT,* 2010 WI App 138, 329 Wis. 2d 748, 792 N.W.2d 572, that affirmed a judgment entered by the Milwaukee County Circuit Court[1] on a jury verdict in favor of 260 North 12th Street, LLC and Basil E. Ryan, Jr. (collectively, Ryan).

¶ 2. Pursuant to its power of eminent domain, the Wisconsin Department of Transportation (DOT) acquired Ryan's property as part of a plan to reconstruct a major freeway interchange in downtown Milwaukee, commonly known as the Marquette Interchange. A jury awarded Ryan $2,001,725 as just compensation for the taking of his property. Over Ryan's objection, the jury was presented evidence concerning the environmental contamination of Ryan's property and the cost to remediate it.

¶ 3. Ryan moved the circuit court for a judgment notwithstanding the verdict or, alternatively, for a new trial, maintaining that evidence of environmental contamination and of remediation costs are inadmissible in

---

[1] The Honorable Francis T. Wasielewski presided over this case from the filing of the Wis. Stat. § 32.05(11) (2005–06) appeal on June 22, 2005, until August 1, 2007, when the case was transferred to the Honorable Michael B. Brennan because of judicial rotation. Judge Brennan presided over many of the proceedings pertaining to the instant appeal, including the pre-trial motions and the jury trial. On December 1, 2008, the case was transferred to the Honorable William Sosnay who entered the judgment.

All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

condemnation proceedings as a matter of law. In addition, Ryan argued that the circuit court erroneously exercised its discretion when it (1) admitted speculative testimony by the DOT's appraiser, (2) excluded Ryan's expert witnesses, and (3) rejected Ryan's proposed jury instructions.

¶ 4. The circuit court denied Ryan's motion and entered judgment on the jury verdict. The court of appeals affirmed.

¶ 5. We granted Ryan's petition for review and now affirm.

¶ 6. This case presents the following four issues:

(1) Are evidence of environmental contamination and of remediation costs admissible in condemnation proceedings under Wis. Stat. ch. 32?

(2) Assuming evidence of environmental contamination and of remediation costs were admissible in this case, did the circuit court erroneously exercise its discretion when it admitted at trial testimony by the DOT's appraiser over Ryan's objection that the testimony was speculative?

(3) Did the circuit court erroneously exercise its discretion when it excluded Ryan's expert witnesses as a result of Ryan's failure to timely disclose the witnesses in accordance with the court's scheduling order?

(4) Did the circuit court erroneously exercise its discretion when it rejected Ryan's proposed jury instructions in favor of the standard jury instruction on fair market value in the case of a total taking?

¶ 7. First, we conclude that evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings under Wis.

40

Stat. ch. 32, subject to the circuit court's broad discretion. Such evidence is admissible in condemnation proceedings in the circuit court's discretion so long as it is relevant to the fair market value of the property. A property's environmental contamination and the costs to remediate it are relevant to the property's fair market value if they would influence a prudent purchaser who is willing and able, but not obliged, to buy the property.

¶ 8. We emphasize that our holding speaks only to a circuit court's discretionary authority to admit evidence of environmental contamination and of remediation costs in condemnation proceedings. We take no position on how the admission of such evidence in a condemnation proceeding may affect the property owner in a future environmental action, if one should occur.

¶ 9. Second, we conclude that the circuit court appropriately exercised its discretion when it admitted at trial testimony by the DOT's appraiser over Ryan's objection that the testimony was speculative. Ryan does not take issue with the appraiser's qualifications or the relevance of his testimony; rather, Ryan objects to the method by which the appraiser valued Ryan's property. However, any flaws in the appraiser's methodology properly went to the weight of his testimony, not its admissibility.

¶ 10. Third, we conclude that the circuit court appropriately exercised its discretion when it excluded Ryan's expert witnesses as a result of Ryan's failure to timely disclose the witnesses in accordance with the court's scheduling order. The circuit court acted under its express statutory authority to sanction Ryan and made a reasoned decision to exclude the expert witnesses after carefully considering the facts of record.

¶ 11. Fourth and finally, we conclude that the circuit court appropriately exercised its discretion when it rejected Ryan's proposed jury instructions in favor of the standard jury instruction on fair market value in the case of a total taking. Ryan's bald assertion that the given jury instructions were insufficient does not meet the standard for reversal.

## I. FACTUAL BACKGROUND

¶ 12. Pursuant to its power of eminent domain under Wis. Stat. § 32.05, the DOT acquired Ryan's property as part of a plan to reconstruct the Marquette Interchange. Exercising his right under § 32.05(2)(b), Ryan obtained his own appraisal of his property, completed by Wisconsin-certified general appraiser Lawrence R. Nicholson (Nicholson). Nicholson valued Ryan's property at $3,497,000. However, based upon its own appraisal, the DOT offered Ryan compensation of $1,348,000. *See* § 32.05(3). Ryan rejected the DOT's offer. Consequently, on March 30, 2005, the DOT recorded in the office of the Register of Deeds of Milwaukee County an award of damages equal to the jurisdictional offer and took Ryan's property. *See* § 32.05(7).

## II. PROCEDURAL POSTURE

¶ 13. On June 22, 2005, pursuant to Wis. Stat. § 32.05(11), Ryan appealed the DOT's award of damages to the Milwaukee County Circuit Court. The sole issue on appeal was the amount of just compensation owed to Ryan by the DOT, as determined by a jury. *See* § 32.05(11).

¶ 14. On December 13, 2005, the Honorable Francis T. Wasielewski conducted the case's first scheduling conference. Ryan's counsel, Attorney Alan

Marcuvitz, was present. Judge Wasielewski issued a scheduling order, which, *inter alia,* set February 15, 2006, as the date by which Ryan was required to disclose his witnesses, including experts.[2] The order explicitly provided, in bold-faced type, "Witnesses not timely named and described shall not be called as witnesses at trial, except for good cause shown."

¶ 15. Adhering to the scheduling order, Ryan submitted his list of witnesses on February 15, 2006. His list disclosed two expert witnesses: Nicholson and an unnamed "Surveyor/Engineer" from Kapur & Associates. In addition, at the end of his witness list, Ryan "reserve[d] the right . . . to name witnesses to be called in rebuttal including, but not limited to" appraisers Stuart M. Fritz and Mark A. Athanas.

¶ 16. On May 8, 2006, the DOT filed its list of witnesses. The DOT named 17 expert witnesses, including Wisconsin-certified general appraiser Scott L. MacWilliams (MacWilliams) and professional engineer and geologist Kenneth S. Wade (Wade). The DOT explained that MacWilliams was expected to testify as to the value of Ryan's property, and Wade was expected to testify as to the discovery of environmental contamination on Ryan's property and the estimated costs of

---

[2] Specifically, paragraph 2 of the scheduling order stated:

Counsel shall provide in writing to opposing counsel: (a) the name and addresses of lay witnesses (with a brief statement as to their testimony); (b) the names, addresses, and resumes together with a written report for each expert named; [Failure to provide a permanency report from a witness shall preclude that witness from expressing an opinion regarding permanency, except for good cause.] and (c) an itemized statement of damages claimed, including any special damage claims and permanency, on or before

Feb. 15, 2006 by Plaintiff . . . .

43

remediation. At that time, the DOT served upon Ryan copies of both MacWilliams' appraisal report and Wade's memorandum.

¶ 17. Nicholson and MacWilliams were deposed on July 12, 2006, and August 30, 2006, respectively. Nicholson testified that his appraisal of Ryan's property assumed that the property was environmentally clean. Still, Nicholson conceded that a prudent buyer of property would deduct from his or her offer price the cost to remediate any environmental contamination. MacWilliams, in turn, confirmed that his appraisal of Ryan's property included a deduction for environmental contamination and the estimated costs of remediation.

¶ 18. On May 23, 2007, notice was sent to the parties that effective August 1, 2007, the case would be transferred to the Honorable Michael B. Brennan because of judicial rotation. Soon after August 1, 2007, Attorney Marcuvitz informed Judge Brennan that he intended to withdraw as Ryan's counsel. Based on that information, on August 27, 2007, Judge Brennan suspended the court's scheduling order, pending the resolution of the status of Ryan's counsel. However, the court's order specifically provided, "It is the present understanding of the Court that the deadlines for disclosure of lay and expert witnesses, which deadlines have been met in this matter, will not be reset at [the] new scheduling conference."

¶ 19. On October 4, 2007, the circuit court granted Attorney Marcuvitz's motion to withdraw as Ryan's counsel. By that time, Ryan had yet to secure new counsel.

¶ 20. On January 10, 2008, the circuit court held a status conference and issued an amended scheduling order. The order, in relevant part, set March 15, 2008, as the date by which Ryan was required to respond to

written discovery requests; May 15, 2008, as the date by which the parties had to file any dispositive motions; and June 30, 2008, as the date by which discovery had to be completed. The order did not, however, amend Ryan's deadline for disclosure of witnesses.

¶ 21. On March 17, 2008, Ryan retained Attorney Dan Biersdorf as his new counsel. Subsequently, Ryan and the DOT reached a stipulation that Ryan would have an additional three weeks to respond to written discovery requests. The circuit court approved the parties' stipulation and amended the scheduling order accordingly. Again, the court's order did not amend Ryan's deadline for disclosure of witnesses.

¶ 22. On May 15, 2008, Ryan filed a motion for partial summary judgment,[3] seeking to exclude from trial any evidence concerning the impact of environmental contamination on the value of Ryan's property. Relying on his right to due process and the concept of fundamental fairness, Ryan argued that evidence of environmental contamination and of remediation costs are inadmissible in condemnation proceedings as a matter of law. Specifically, Ryan alleged that admitting such evidence improperly subjects the property owner to a "double-take," in which the condemnor acquires the contaminated property at a discounted rate while still retaining the right to pursue the responsible party for cleanup costs.

¶ 23. In the alternative, assuming evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings, Ryan argued that the circuit court must preclude MacWilliams

---

[3] While Ryan referred to his motion as a motion for partial summary judgment, the motion more accurately functioned as a motion in limine.

from testifying on the grounds that his appraisal is speculative. In particular, Ryan maintained that MacWilliams failed to apply the proper methodology for valuing contaminated properties as provided by the Uniform Standards of Professional Appraisal Practice (USPAP).[4] In support, Ryan relied upon the opinions of two experts, certified general appraiser Jason Messner (Messner) and professional engineer Joe Michaelchuck (Michaelchuck).

¶ 24. Five days later, on May 20, 2008, the DOT moved the circuit court to exclude Ryan's newly disclosed expert witnesses on the grounds that neither Messner nor Michaelchuck were named in Ryan's February 15, 2006, witness list.

¶ 25. In opposition to the DOT's motion, Ryan asserted that he permissibly retained Messner and Michaelchuck to rebut MacWilliams' testimony. Ryan noted that the scheduling order was silent as to rebuttal witnesses specifically, and, moreover, he expressly reserved the right to name rebuttal witnesses. In any event, Ryan argued, the relevance of Messner and Michaelchuck's testimony outweighs any prejudice suffered by the DOT.

---

[4] More specifically, Ryan alleged that MacWilliams failed to apply the impaired analysis methodology prescribed by USPAP Advisory Opinion 9 (AO-9), which governs the appraisal of real property impacted by environmental contamination. *See generally* Appraisal Standards Board, USPAP: AO-9 (2010–11), http://www.uspap.org/AO/ao01_10/ao_09.htm (last visited Dec. 19, 2011). According to Ryan, AO-9 provides that an appraiser must first determine the clean, uncontaminated value of the property and then make deductions for three components of contamination: cost effects (the costs of remediation), use effects (the effects on site usability), and risks effects (stigma).

¶ 26. On June 4, 2008, the circuit court held a hearing and granted the DOT's motion to exclude Messner and Michaelchuck as a result of their untimely disclosure. Acting pursuant to Wis. Stat. §§ 802.10, 804.12(2), and 805.03, the circuit court concluded that Ryan failed to demonstrate good cause for relief from the scheduling order. In a lengthy oral ruling, the court reasoned that its August 27, 2007, order memorialized the parties' agreement not to amend their respective deadlines for the disclosure of witnesses, and Ryan never sought leave to add any witnesses. Furthermore, the circuit court determined that permitting Messner and Michaelchuck to testify would substantially prejudice the DOT because discovery was set to close, and the DOT would have to radically alter its defense strategy. Conversely, the court explained, excluding Messner and Michaelchuck would result in only minor prejudice to Ryan since he had already submitted a comprehensive witness list with an eye towards trial.

¶ 27. Ryan moved for reconsideration, which the circuit court denied on July 22, 2008. On that same date, the circuit court also denied Ryan's motion for partial summary judgment. Persuaded by the Connecticut Supreme Court's decision in *Northeast CT Economic Alliance, Inc. v. ATC Partnership,* 776 A.2d 1068 (Conn. 2001), the circuit court concluded that evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings because they bear on the fair market value of the subject property: "Excluding contamination evidence as the Connecticut Court points out . . . would likely result in a fictional property value, a result that would be inconsistent with the principles by which just compensation is calculated." The circuit court further rejected Ryan's argument that MacWilliams should be precluded from testifying, rea-

soning that any flaws in MacWilliams' methodology go to the weight of the evidence, not its admissibility.

¶ 28. The case proceeded to a seven-day jury trial, beginning on August 25, 2008. The jury was presented evidence that Ryan's property was located in Milwaukee's Menomonee Valley, a largely abandoned industrial area contaminated with pollutants, including lead, benzene, arsenic, diesel range organics, and polychlorinated biphenyls. Among others, Nicholson and MacWilliams testified as to the value of Ryan's property, taking into consideration the property's environmental contamination and the estimated costs of remediation.

¶ 29. The circuit court rejected Ryan's proposed jury instructions on remediation costs and impaired versus unimpaired market value and instead provided to the jury Wis JI—Civil 8100, the standard jury instruction on fair market value in the case of a total taking. The special verdict asked the jury to determine the fair market value of Ryan's property at the time of the taking on March 30, 2005. The jury answered, $2,001,725.

¶ 30. On September 22, 2008, Ryan moved the circuit court for a judgment notwithstanding the verdict or, alternatively, for a new trial, raising the same issues as argued in his pre-trial motions. The circuit court denied Ryan's motion.

¶ 31. On April 30, 2009, the Honorable William Sosnay entered judgment on the jury verdict and awarded Ryan $653,725 in damages, the difference between the jury verdict and the March 30, 2005, award of damages; $268,000 in attorney's fees; and $48,019.40 in costs.

¶ 32. Ryan appealed from the judgment, and the court of appeals affirmed. *260 N. 12th St.*, 329 Wis. 2d 748. First, the court of appeals concluded that evidence

of environmental contamination and of remediation costs are admissible in condemnation proceedings under Wis. Stat. ch. 32. *Id.*, ¶ 23. The court reasoned that "[e]nvironmental contamination and the need to remediate the contamination is relevant to fair market value and, therefore, it is relevant to a determination of just compensation pursuant to Wis. Stat. § 32.09(5)(a)." *Id.*

¶ 33. Second, the court of appeals determined that the circuit court appropriately exercised its discretion when it excluded Messner and Michaelchuck. *Id.*, ¶ 38. As a preliminary matter, the court of appeals agreed with the circuit court that Ryan violated the scheduling order by his untimely disclosure of Messner and Michaelchuck. *Id.*, ¶ 33. Furthermore, the court of appeals found no reason to disturb the circuit court's discretionary decision to exclude the two expert witnesses, noting that the circuit court carefully balanced the purported relevance of the testimony against the threat of substantial prejudice to the DOT. *See id.*, ¶ 34.

¶ 34. Third, the court of appeals rejected Ryan's argument that the circuit court erroneously admitted MacWilliams' testimony. *Id.*, ¶ 41. The court of appeals explained that Ryan's challenges to MacWilliams' methodology went to the weight of the testimony, not its admissibility. *Id.*, ¶ 40. As the court of appeals pointed out, the jury was able to consider any flaws in MacWilliams' appraisal through Ryan's cross-examination. *Id.*, ¶ 41.

¶ 35. Finally, the court of appeals declined to address Ryan's claim that the circuit court erroneously rejected his proposed jury instructions, reasoning that Ryan's brief was devoid of any explanation as to how the jury was misled by the instruction actually given. *Id.*, ¶ 43.

¶ 36. Ryan petitioned this court for review, which we granted on March 16, 2011. We now affirm.

49

## III. STANDARD OF REVIEW

¶ 37. The four issues in this case implicate varied standards of review. We discuss them by issue.

■■

¶ 38. First, we must determine whether the circuit court appropriately admitted at trial evidence concerning the environmental contamination of Ryan's property and the cost to remediate it. " 'The admission of evidence touching upon the value of property appropriated in condemnation cases must be left largely to the discretion of the trial judge.' " *Leathem Smith Lodge, Inc. v. State,* 94 Wis. 2d 406, 409, 288 N.W.2d 808 (1980) (quoting 5 *Nichols on Eminent Domain,* § 18.1[3], at 18–38–40); *see also Arents v. ANR Pipeline Co.,* 2005 WI App 61, ¶ 12, 281 Wis. 2d 173, 696 N.W.2d 194. We will not disturb a circuit court's decision to admit evidence unless the court erroneously exercised its discretion. *State v. Ringer,* 2010 WI 69, ¶ 24, 326 Wis. 2d 351, 785 N.W.2d 448. A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record. *Id.*

■

¶ 39. In this case, Ryan argues that the circuit court erred as a matter of law when it admitted at trial evidence of environmental contamination and of remediation costs. Whether such evidence is inadmissible in condemnation proceedings as a matter of law requires us to interpret and apply Wis. Stat. ch. 32. Statutory interpretation and application present questions of law that we review de novo while benefiting from the analyses of the court of appeals and circuit court. *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.,* 2010 WI 58, ¶ 20, 326 Wis. 2d 82, 785 N.W.2d 409.

50

¶ 40. Second, assuming evidence of environmental contamination and of remediation costs were admissible in this case, we must determine whether the circuit court appropriately admitted at trial MacWilliams' testimony. Like the decision to admit evidence, the decision to admit expert testimony is reviewed under the standard of erroneous exercise of discretion. *See Hoekstra v. Guardian Pipeline, LLC,* 2006 WI App 245, ¶ 14, 298 Wis. 2d 165, 726 N.W.2d 648; *Arents,* 281 Wis. 2d 173, ¶ 13.

¶ 41. Third, we must determine whether the circuit court appropriately excluded Messner and Michaelchuck. A circuit court's decision to impose sanctions for a violation of the court's scheduling order, and the decision of which sanction to impose, is, again, within the circuit court's sound discretion. *Hefty v. Strickhouser,* 2008 WI 96, ¶ 28, 312 Wis. 2d 530, 752 N.W.2d 820.

¶ 42. The fourth and final issue relates to the circuit court's decision to reject Ryan's proposed jury instructions. The decision of which jury instructions to give is also discretionary. *See State v. Burris,* 2011 WI 32, ¶ 24, 333 Wis. 2d 87, 797 N.W.2d 430; *Kolpin v. Pioneer Power & Light Co.,* 162 Wis. 2d 1, 32, 469 N.W.2d 595 (1991).

## IV. ANALYSIS

A. Admission of Evidence of Environmental Contamination and of Remediation Costs

¶ 43. The Takings Clause of the Fifth Amendment of the United States Constitution, made appli-

cable to the States through the Fourteenth Amendment, *see Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 536 (2005) (citing *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago,* 166 U.S. 226 (1897)), mandates that private property shall not "be taken for public use, without just compensation." Similarly, Article I, Section 13 of the Wisconsin Constitution provides that "[t]he property of no person shall be taken for public use without just compensation therefor." *See also E-L Enters.,* 326 Wis. 2d 82, ¶ 21; *City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redevelopment Auth. of Milwaukee,* 2009 WI 841, ¶ 35, 319 Wis. 2d 553, 768 N.W.2d 749. As the text of those provisions make clear, the federal and state constitutions do not prohibit the taking of private property for public use but rather " 'place[] a condition on the exercise of that power.' " *Lingle,* 544 U.S. at 536 (quoting *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles, Cal.,* 482 U.S. 304, 314 (1987)). Namely, the government must justly compensate the property owner for the taking. *See id.* at 537.

¶ 44. Wisconsin Stat. § 32.09 codifies the constitutional requirement that a property owner receive just compensation for the taking of his or her property. Because § 32.09 is a statute intended to benefit an owner whose property is taken against his or her will, we afford it liberal construction. *See Spiegelberg v. State,* 2006 WI 75, ¶ 31, 291 Wis. 2d 601, 717 N.W.2d 641; *Standard Theatres, Inc. v. DOT,* 118 Wis. 2d 730, 742–43, 349 N.W.2d 661 (1984).

¶ 45. Wisconsin Stat. § 32.09(1) provides, in relevant part, that "[t]he compensation so determined . . . shall be as of the date of evaluation as fixed by s. 32.05(7)(c) . . . ." Wisconsin Stat. § 32.05(7)(c), in turn,

defines the "date of evaluation," or the "date of taking," as the date on which the condemnor records its award of damages in the office of the register of deeds of the county wherein the property is located.

¶ 46. In addition, in the case of a total taking, as is the case with Ryan's property, Wis. Stat. § 32.09(5)(a) provides that "the condemnor shall pay the fair market value of the property taken . . . ."

■ ■

¶ 47. "Fair market value" is well-defined by our case law. "Fair market value is 'the amount for which the property could be sold in the market on a sale by an owner willing, but not compelled, to sell, and to a purchaser willing and able, but not obliged, to buy.' " *Spiegelberg*, 291 Wis. 2d 601, ¶ 21 (quoting *Pinczkowski v. Milwaukee Cnty.*, 2005 WI 161, ¶ 18, 286 Wis. 2d 339, 706 N.W.2d 642); *see also City of Milwaukee Post No. 2874*, 319 Wis. 2d 553, ¶ 4; *Arents*, 281 Wis. 2d 173, ¶ 14; Wis JI—Civil 8100. Consistent with that definition, we have said that when determining the value of property in a condemnation proceeding, " 'every element which affects value and which would influence a prudent purchaser should be considered.' " *Clarmar Realty Co. v. Redevelopment Auth. of Milwaukee*, 129 Wis. 2d 81, 91, 383 N.W.2d 890 (1986) (quoting *Herro v. DNR*, 67 Wis. 2d 407, 420, 227 N.W.2d 456 (1975)); *see also Ken-Crete Prods. Co. v. State Highway Comm'n*, 24 Wis. 2d 355, 359–60, 129 N.W.2d 130 (1964); *Hoekstra*, 298 Wis. 2d 165, ¶ 33; *Arents*, 281 Wis. 2d 173, ¶ 15. Wisconsin JI—Civil 8100, the standard jury instruction on fair market value in the case of a total taking, incorporates that rule. *See* Wis JI—Civil 8100 (instructing jurors that they "should consider every element that establishes the fair market value of the property").

██

¶ 48. In this case, we are called upon to determine whether evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings under Wis. Stat. ch. 32. In light of the above rule, the answer is quite simply, yes. Subject to the circuit court's discretion, evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings so long as they are relevant to the fair market value of the property.[5] A property's environmental contamination and the costs to remediate it are relevant to the property's fair market value if they would influence a prudent purchaser who is willing and able, but not obliged, to buy the property. To conclude, as a matter of law, that environmental contamination and remediation costs are not relevant to a property's fair market value, in the words of the Connecticut Supreme Court, "blinks at reality." *Ne. CT Econ. Alliance,* 776 A.2d at 1080 ("Excluding contamination evidence, as a matter of law, is likely to result in a fictional property value—a result that is inconsistent with the principles by which just compensation is calculated. It blinks at reality to say that a willing buyer would simply ignore the fact of contamination, and its attendant economic consequences, including specifically

---

[5] We do not, and cannot, detail every scenario in which evidence of environmental contamination and of remediation costs may or may not be admissible in a condemnation proceeding. Indeed, we could envision a scenario in which one is admissible while the other is not. Suffice it to say that in each condemnation proceeding, the circuit court must exercise its discretion in admitting or excluding evidence of environmental contamination and of remediation costs, in accordance with our rules of evidence governing relevance and the admissibility of expert testimony. *See* Wis. Stat. §§ 904.01, 904.02, 904.03, 907.02.

the cost of remediation, in deciding how much to pay for property."). Indeed, in this context, we view evidence of environmental contamination no differently than evidence of a leaky basement, a cracked foundation, or a dilapidated roof: in each case, if the damage and the attendant costs of repair would influence a prudent purchaser in determining how much to pay for the property, then evidence of such damage and repair costs is relevant to fair market value and therefore admissible in condemnation proceedings.

¶ 49. Ryan asks us not to view these issues so simply. Relying in large part on the Minnesota Supreme Court's recent decision in *Moorhead Economic Development Authority v. Anda*, 789 N.W.2d 860 (Minn. 2010), Ryan argues that evidence of environmental contamination and of remediation costs should be excluded in condemnation proceedings as a matter of law.[6] Citing fairness considerations and due process concerns, the *Anda* court held that evidence of environmental contamination and of remediation costs are generally inadmissible in condemnation proceedings.[7] *Id.* at 878.

---

[6] It should be noted that Ryan changed course at oral argument, taking no issue with the idea that environmental contamination and remediation costs are relevant to a property's fair market value and therefore generally admissible in condemnation proceedings. Instead, Ryan's focus at oral argument was the alleged speculative nature of the particular evidence in his case.

We view Ryan's concessions at oral argument as further support for our holding that evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings under Wis. Stat. ch. 32, subject to the circuit court's discretion. Still, we analyze the issues as they were originally appealed and briefed to us.

[7] *See also DOT v. Parr*, 633 N.E. 2d 19, 23 (Ill. App. Ct. 1994), *superseded by statute*, 735 Ill. Comp. Stat. 30/10–5-50

According to the *Anda* court, admitting such evidence would unfairly subject the property owner to "double liability" or a "double-take," in which the property owner must first pay for the contamination through a reduced condemnation award while still remaining potentially liable for the contamination under environmental law. *Id.* Such double liability, the court reasoned, violates the constitutional requirement that when the government condemns property, the property owner must be put in as good of a position pecuniarily as if his or her property had not been taken. *See id.* (citing *Olson v. United States,* 292 U.S. 246, 255 (1934)). In addition, the *Anda* court maintained that a rule of law excluding evidence of environmental contamination and of remediation costs more adequately protects a property owner's right to procedural due process. *Anda,* 789 N.W.2d at 882. Specifically, the court noted that in a condemnation proceeding, a property owner lacks the ability to contest liability for the contamination or implead other potentially responsible parties. *Id.* In the end, the *Anda* court acknowledged its departure from the usual standard applied in condemnation proceedings but deemed it necessary in the interests of fairness:

> Although condemnation awards are usually based on the fair market value of the property in whatever condition the property is at the time of the taking, the constitutional standard that courts must adhere to is "just compensation." Courts can be fluid in the standards they apply to determine "just compensation" when fairness so requires.

*Id.* at 880.

---

(2007); *Aladdin, Inc. v. Black Hawk Cnty.,* 562 N.W.2d 608, 615–16 (Iowa 1997); *Hous. Auth. of New Brunswick v. Suydam Investors, L.L.C.,* 826 A.2d 673, 687 (N.J. 2003); *City of New York v. Mobil Oil Corp.,* 783 N.Y.S.2d 75, 79 (N.Y. App. Div. 2004).

¶ 50. Turning to the instant case, Ryan invites us to adopt the Minnesota Supreme Court's exclusion approach in *Anda,* arguing that it is consistent with our policy of liberally construing Wis. Stat. § 32.09. *See Spiegelberg,* 291 Wis. 2d 601, ¶ 31; *Standard Theatres,* 118 Wis. 2d at 742–43. We decline Ryan's invitation.

■

¶ 51. The concerns raised by Ryan and the Minnesota Supreme Court do not go unnoticed. However, for purposes of the instant case, they miss the mark. Liability for environmental contamination has no place in a condemnation proceeding under Wis. Stat. ch. 32. The purpose of a condemnation proceeding is to ensure that the property owner receives just compensation. As our preceding analysis makes clear, in the case of a total taking, the property owner is justly compensated when he or she receives an amount equal to the property's fair market value on the date of taking. *See* § 32.09(1), (5)(a). To determine the property's fair market value, " 'every element which affects value and which would influence a prudent purchaser should be considered.' " *Clarmar Realty,* 129 Wis. 2d at 91 (quoting *Herro,* 67 Wis. 2d at 420). Environmental contamination and remediation costs unquestionably affect a property's value and thus should be considered. How the property came to be contaminated on the date of taking, or who is responsible, are different questions.[8] *See Ne. CT Econ. Alliance,* 776 A.2d at 1083. As articulated by the Connecticut Supreme Court, "[t]o deny the condemnor the right to put on evidence as to one of the significant

---

[8] For this very reason, we reject Ryan's argument that even if evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings, such evidence must be limited to the extent of the property owner's liability.

determinants of that condition—and hence value—because it may not reflect the owner's degree of responsibility for the condition misses the point of an eminent domain valuation process."[9] *Id.*

¶ 52. Furthermore, the concerns raised by Ryan and the Minnesota Supreme Court are based on an assumption that a subsequent environmental action is a certainty. It is not. In fact, in the instant case, Ryan has not been pursued in a remediation action and, at least according to the DOT, will not be. We decline to exclude evidence of environmental contamination and of remediation costs in condemnation proceedings as a matter of law, and thereby require the condemnor to always pay more than the property's fair market value, based on the mere possibility of a "double-take." Indeed, in the case of a taking, fairness to the property owner is only half the equation. "Whatever the circumstances . . . the dominant consideration always remains the same: What compensation is 'just' both to an owner whose property is taken and to the public that must pay the bill?" *United States v. Commodities Trading Corp.,* 339 U.S. 121, 123 (1950); *see also City of Milwaukee Post No. 2874,* 319 Wis. 2d 553, ¶ 50.

---

[9] Several other courts have similarly concluded. *See Redevelopment Agency of Pomona v. Thrifty Oil Co.,* 5 Cal. Rptr. 2d 687, 689 n.9 (Cal. Ct. App. 1992); *Fla. Dep't of Transp. v. Finkelstein,* 629 So.2d 932, 934 (Fla. Dist. Ct. App. 1993); *Stafford v. Bryan Cnty. Bd. of Educ.,* 466 S.E.2d 637, 640–41 (Ga. Ct. App. 1995); *City of Olathe v. Stott,* 861 P.2d 1287, 1290 (Kan. 1993); *La. Dep't of Transp. & Dev. v. La.-Ark. Ry. Co.,* 704 So.2d 822, 823 (La. Ct. App. 1997); *Silver Creek Drain Dist. v. Extrusions Div., Inc.,* 663 N.W.2d 436, 437 (Mich. 2003); *Or. Dep't of Transp. v. Hughes,* 986 P.2d 700, 703 (Or. Ct. App. 1999); *Tennessee v. Brandon,* 898 S.W.2d 224, 227 (Tenn. Ct. App. 1994).

¶ 53. In summary, we conclude that evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings under Wis. Stat. ch. 32, subject to the circuit court's broad discretion. Accordingly, in this case, the circuit court applied a proper legal standard and did not erroneously exercise its discretion when it admitted at trial evidence concerning the environmental contamination of Ryan's property and the cost to remediate it. How the admission of such evidence in this condemnation proceeding may affect Ryan in a future environmental action, if one should occur, is not before us.

### B. Admission of MacWilliams' Testimony

¶ 54. In the alternative, Ryan argues that the circuit court erroneously exercised its discretion when it admitted at trial MacWilliams' testimony. Specifically, Ryan contends that MacWilliams' appraisal testimony was speculative and therefore inadmissible because MacWilliams failed to apply the proper methodology for valuing contaminated properties as provided by USPAP.

■■

¶ 55. Assuming for the sake of argument that MacWilliams' methodology was in fact flawed, we still do not agree with Ryan that the circuit court erred when it admitted MacWilliams' testimony. A circuit court has broad discretion to admit expert testimony if the witness is qualified as an expert by knowledge, skill, experience, training, or education, and if the testimony is relevant, that is, if the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. Wis. Stat. § 907.02;[10] *State v. Kandutsch,*

---

[10] Effective February 1, 2011, the legislature amended Wis. Stat. § 907.02 to adopt the *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), reliability standard as stated in

2011 WI 78, ¶ 26, 336 Wis. 2d 478, 799 N.W.2d 865; *Hoekstra,* 298 Wis. 2d 165, ¶ 14; *Arents,* 281 Wis. 2d 173, ¶ 13. Here, Ryan does not claim that MacWilliams, a Wisconsin-certified general appraiser, was not qualified to provide testimony on the value of Ryan's property. Ryan also does not claim that MacWilliams' testimony was not helpful to the jury in its determination of the fair market value of Ryan's property. Instead, Ryan takes issue with the method by which MacWilliams appraised Ryan's property. However, any flaws in MacWilliams' methodology properly went to the weight of his testimony, not its admissibility:

> In a state such as Wisconsin, where substantially unlimited cross-examination is permitted, the underlying theory or principle on which admissibility is based can be attacked by cross-examination or by other types of impeachment. Whether a scientific witness whose testimony is relevant is believed is a question of credibility for the finder of fact, but it clearly is admissible.

*State v. Walstad,* 119 Wis. 2d 483, 519, 351 N.W.2d 469 (1984).

### C. Exclusion of Messner and Michaelchuck

¶ 56. Ryan also argues that the circuit court erroneously exercised its discretion when it excluded Ryan's expert witnesses, Messner and Michaelchuck, as a result of their untimely disclosure. Ryan denies violating the court's scheduling order in the first place but maintains that even if he did, the circuit court's decision to exclude

Federal Rule of Evidence 702. *See* 2011 Wis. Act. 2, §§ 34m, 45(5); *State v. Kandutsch,* 2011 WI 78, ¶ 26 n.7, 336 Wis. 2d 478, 799 N.W.2d 865. The instant case was brought on June 22, 2005, and is therefore governed by the then-existing standard for admitting expert testimony.

Messner and Michaelchuck was an unreasonably harsh sanction. We disagree with Ryan on both counts.

¶ 57. A circuit court has both statutory and inherent authority to control its docket through a scheduling order, provided that the court first consults with the parties' counsel and any unrepresented party. *See* Wis. Stat. § 802.10(3); *Hefty,* 312 Wis. 2d 530, ¶ 31. Wisconsin Stat. § 802.10(3)(f) explicitly states that a scheduling order may address "[t]he limitation, control and scheduling of depositions and discovery, including the identification and disclosures of expert witnesses . . . ."

¶ 58. A party's failure to follow a scheduling order is grounds for sanctions at the circuit court's discretion. Wis. Stat. § 802.10(7); *Hefty,* 312 Wis. 2d 530, ¶ 76. Wisconsin Stat. § 802.10(7) provides, in relevant part, that violations of a scheduling order are subject to Wis. Stat. §§ 804.12 and 805.03. Wisconsin Stat. § 804.12(2)(a)2. grants a circuit court discretionary authority, *inter alia,* to prohibit a party "from introducing designated matters in evidence" for the failure to obey a scheduling order. Wisconsin Stat. § 805.03 grants a circuit court even broader discretionary authority to make such orders "as are just" for the failure to obey an order of the court. *See also Hefty,* 312 Wis. 2d 530, ¶ 74. This court has recognized that "[a] court's discretionary sanction for violation of a scheduling order is generally well grounded when a scheduling conference has taken place at which all interested parties were present to be heard." *Id.,* ¶ 33. Active participation in a scheduling conference ensures knowledge of deadlines and hence leaves little room for tardiness or claimed ignorance. *Id.*

61

¶ 59. In this case, the circuit court's first scheduling order, entered after a scheduling conference at which Attorney Marcuvitz was present, set February 15, 2006, as the date by which Ryan was required to disclose his witnesses, including experts. The order explicitly provided, "Witnesses not timely named and described shall not be called as witnesses at trial, except for good cause shown." Evidently cognizant of the deadline, Ryan submitted his list of witnesses on February 15, 2006. It is undisputed that Messner and Michaelchuck were not included within that list. In fact, Ryan did not disclose Messner and Michaelchuck until May 15, 2008, when he filed his motion for partial summary judgment. Consequently, pursuant to the scheduling order's explicit directive, Ryan was precluded from calling Messner and Michaelchuck as witnesses at trial absent "good cause shown."

¶ 60. While the circuit court amended the scheduling order on several occasions, including after Attorney Marcuvitz withdrew as Ryan's counsel and again after Ryan retained Attorney Biersdorf, the court never amended Ryan's February 15, 2006, deadline for the disclosure of witnesses. In fact, the circuit court's August 27, 2007, order explicitly confirmed that the deadline had been met and would not be reset. At no time did Ryan ever move the court for relief from the deadline and, at least according to the record, never so much as objected to the deadline until after the circuit court excluded Messner and Michaelchuck.

¶ 61. Still, Ryan denies violating the court's scheduling order, noting that the scheduling order was silent as to rebuttal witnesses specifically and that he expressly reserved the right to name rebuttal witnesses.

¶ 62. Ryan's points are unavailing. The scheduling order applied Ryan's February 15, 2006, disclosure dead-

line to both lay witnesses and expert witnesses, without singling out rebuttal witnesses. Moreover, at the end of his witness list, Ryan specifically named two "witnesses to be called in rebuttal," neither of which were Messner or Michaelchuck. As the court of appeals pointed out, the fact that Ryan specifically named two rebuttal witnesses in his witness list "belies his assertion that he did not believe the 2005 Scheduling Order applied to rebuttal witnesses." *See 260 N. 12th St.,* 329 Wis. 2d 748, ¶ 31. In addition, the fact that Ryan, in his witness list, expressly reserved the right to name other rebuttal witnesses cannot save him from his untimely disclosure of Messner and Michaelchuck. To conclude otherwise would "entirely defeat[] the very purpose of the witness list requirement." *See Estate of Hegarty v. Beauchaine,* 2006 WI App 248, ¶ 188, 297 Wis. 2d 70, 727 N.W.2d 857.

¶ 63. Pursuant to Wis. Stat. §§ 802.10, 804.12(2), and 805.03, the circuit court exercised its discretion to sanction Ryan for his failure to abide by the scheduling order, excluding Messner and Michaelchuck as expert witnesses. The circuit court concluded that Ryan failed to demonstrate good cause as to why Messner and Michaelchuck should be called at trial. Ryan maintains that the circuit court's decision to exclude Messner and Michaelchuck was unreasonably harsh.

¶ 64. The question before us is not whether we would have granted the same sanction but instead whether the circuit court erroneously exercised its discretion when it made its decision. *Hefty,* 312 Wis. 2d 530, ¶ 71. In this case, the answer is quite clearly, no. The circuit court acted under its express statutory authority to sanction Ryan and, in a 24–page decision, reasonably excluded Messner and Michaelchuck after carefully considering the facts of record. The circuit court considered

both the fact that the August 27, 2007, order memorialized the parties' agreement not to amend their respective deadlines for the disclosure of witnesses and the fact that Ryan never sought leave to add any witnesses. The court then exhaustively balanced any perceived prejudices that could result from its decision. First, the court acknowledged that Ryan would suffer "minor prejudice" if Messner and Michaelchuck were excluded; namely, Ryan would be restricted to calling only those expert witnesses named by his former counsel. However, the circuit court determined that Ryan's mere preference for Messner and Michaelchuck's testimony did not rise to good cause for relief from the scheduling order:

> [There is] no question that previous opinion testimony proffered on behalf of [Ryan] went to the issues at trial. It's just it's not the opinion testimony that [Ryan's] new counsel wants to put on, and what the Court has to be satisfied here with is that there would be some kind of good cause as to why Mr. Messner or Mr. Michaelchuck should be allowed to offer these opinions notwithstanding the fact that it's outside of the scheduling order, and the Court doesn't see that.

Conversely, the circuit court concluded that the DOT would be "substantial[ly] prejudice[d]" if Messner and Michaelchuck were permitted to testify.[11] The court explained that discovery was set to close, pretrial re-

---

[11] Citing Wis. Stat. § 904.03, Ryan argues that the circuit court should have balanced the danger of prejudice against the probative value of Messner and Michaelchuck's testimony, maintaining that the court's failure to do so was erroneous as a matter of law. As a preliminary point, we disagree with Ryan that the circuit court did not consider the relevance of Messner and Michaelchuck's testimony. In fact, the court expressly considered the relevance of Messner and Michaelchuck's testimony, along with the relevance of Nicholson's testimony. In

64

ports were soon due, and the DOT would have to drastically alter its defense strategy, "notwithstanding the fact that the [DOT] here followed the scheduling order." The court ultimately concluded that the prejudice to the DOT would be too great if Ryan were to be granted relief from the scheduling order, and we see no reason to disturb the circuit court's thoughtful determination.[12]

### D. Rejection of Ryan's Proposed Jury Instructions

¶ 65. Finally, Ryan argues he is entitled to a new trial on the grounds that the circuit court improperly rejected his proposed jury instructions on remediation costs and impaired versus unimpaired market value. Ryan's argument is unsupported by the law.

---

the end, the court determined that Ryan's mere preference for Messner and Michaelchuck's testimony, over Nicholson's, did not rise to good cause for relief from the scheduling order.

Regardless, the circuit court did not err by not applying Wis. Stat. § 904.03. Section 904.03 is a rule of evidence governing the exclusion of otherwise relevant evidence on the grounds of "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here, however, the circuit court was excluding Messner and Michaelchuck as a sanction for Ryan's failure to obey the scheduling order pursuant to Wis. Stat. § 802.10.

[12] In his brief, in mere passing, Ryan argues that he should be relieved from the circuit court's order excluding Messner and Michaelchuck on the grounds that Attorney Marcuvitz's failure to timely secure an expert witness to address the contamination issue constituted "excusable neglect" under Wis. Stat. § 806.07(1)(a). However, the operative word in "excusable neglect" is "excusable." *See Casper v. Am. Int'l S. Ins. Co.*, 2011 WI 88, ¶ 37, 336 Wis. 2d 267, 800 N.W.2d 880.

¶ 66. A circuit court has wide discretion in determining which jury instructions to give. *Fischer v. Ganju,* 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992); *Kolpin,* 162 Wis. 2d at 32. If the given jury instructions adequately communicated the law and were applicable to the facts, no grounds for reversal exist. *Fischer,* 168 Wis. 2d at 850. Moreover, even if the circuit court rejected proposed jury instructions that were arguably appropriate, we will not reverse unless the court's failure to include the proposed jury instructions was prejudicial. *Kolpin,* 162 Wis. 2d at 32.

¶ 67. In this case, the circuit court instructed the jury according to Wis JI—Civil 8100, the standard jury instruction on fair market value in the case of a total taking. Ryan does not argue that the given jury instructions incorrectly communicated the law. Ryan also does not argue that he was prejudiced by the circuit court's failure to include his proposed jury instructions on remediation costs and impaired versus unimpaired market value. Rather, Ryan merely asserts that the given jury instructions "were insufficient for a complicated trial such as in this case." As the preceding standard makes clear, Ryan's bald assertion that the given jury instructions were insufficient does not meet the standard for reversal.

## V. CONCLUSION

¶ 68. First, we conclude that evidence of environmental contamination and of remediation costs are admissible in condemnation proceedings under Wis. Stat. ch. 32, subject to the circuit court's broad discretion. Such evidence is admissible in condemnation proceedings in the circuit court's discretion so long as it

is relevant to the fair market value of the property. A property's environmental contamination and the costs to remediate it are relevant to the property's fair market value if they would influence a prudent purchaser who is willing and able, but not obliged, to buy the property.

¶ 69. We emphasize that our holding speaks only to a circuit court's discretionary authority to admit evidence of environmental contamination and of remediation costs in condemnation proceedings. We take no position on how the admission of such evidence in a condemnation proceeding may affect the property owner in a future environmental action, if one should occur.

¶ 70. Second, we conclude that the circuit court appropriately exercised its discretion when it admitted at trial testimony by the DOT's appraiser over Ryan's objection that the testimony was speculative. Ryan does not take issue with the appraiser's qualifications or the relevance of his testimony; rather, Ryan objects to the method by which the appraiser valued Ryan's property. However, any flaws in the appraiser's methodology properly went to the weight of his testimony, not its admissibility.

¶ 71. Third, we conclude that the circuit court appropriately exercised its discretion when it excluded Ryan's expert witnesses as a result of Ryan's failure to timely disclose the witnesses in accordance with the court's scheduling order. The circuit court acted under its express statutory authority to sanction Ryan and made a reasoned decision to exclude the expert witnesses after carefully considering the facts of record.

¶ 72. Fourth and finally, we conclude that the circuit court appropriately exercised its discretion when it rejected Ryan's proposed jury instructions in favor of

the standard jury instruction on fair market value in the case of a total taking. Ryan's bald assertion that the given jury instructions were insufficient does not meet the standard for reversal.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 73. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I would have the court either dismiss this matter as improvidently granted (thereby letting the decision of the court of appeals stand as precedent) or adopt the court of appeals decision without further writing. Why? Because the property owner conceded at oral argument that evidence of contamination and anticipated remediation costs is admissible in valuation of condemned property.[1] This court is not bound by this concession of law, but the result of the concession is that the court did not have the benefit of exploring with both the condemnor and condemnee the difficult issues that arise in valuing condemned contaminated property.

¶ 74. The majority opinion agrees with the court of appeals decision, which rests on Wis. Stat. § 32.09 and case law defining fair market value. The majority opinion reaches the same conclusion as the court of appeals: Admission of evidence is a matter of a circuit court's discretion. Evidence of contamination and anticipated remediation costs is admissible if the circuit court in the proper exercise of its discretion determines that the evidence is relevant to the fair market value of the condemned property in the particular case.

¶ 75. As I see it, the value added by a decision from this court over the published decision of the court of appeals in the present case would be to explore, at least

---

[1] The other two issues about the circuit court's exercise of discretion are run-of-the-mill issues that do not warrant review; they do not raise any new issues of law.

preliminarily, issues a circuit court may face in exercising its discretion in admitting or excluding evidence of contamination and anticipated remediation costs as relevant to fair market value in a condemnation case. The majority opinion does not do this and cannot because of the concession and the limited oral argument.

¶ 76. The valuation of condemned contaminated property is a developing area of the law.[2] Only 12 states seem to have addressed the issue and only a slim majority of these states adhere to the rule that contamination and anticipated remediation costs are admissible as affecting the fair market value of condemned property.[3] A slim minority of states exclude evidence of contamination and evidence of anticipated remediation costs, and some exclude only the latter.[4] At least two state courts have adopted a rule that evidence of contamination and anticipated remediation costs is excluded but the condemnation award is held in escrow, allowing the condemnor to initiate a later action to recover actual costs of remediation from the escrow account.[5]

---

[2] For discussions of this area of the law, see, *e.g.*, Andrea L. Reed, Note, *Cleaning Up Condemnation Proceedings: Legislative and Judicial Solutions to the Dilemma of Admitting Contamination Evidence,* 93 Iowa L. Rev. 1135 (2009); Michael L. Stokes, *Valuing Contaminated Property in Eminent Domain: A Critical Look at Some Recent Developments,* 19 Tul. Envtl. L.J. 221 (2006); 4 *Nichols on Eminent Domain* § 13.10, at 13–96 (3d ed. 2007); 7A *Nichols on Eminent Domain* § G13B.03[1] (3d ed. 2007).

[3] *See Moorhead Econ. Dev. Auth. v. Anda,* 789 N.W.2d 860, 877 n.10 (Minn. 2010).

[4] *Id.* at 878.

[5] *See Housing Auth. of City of New Brunswick v. Suydam Investors, LLC,* 826 A.2d 673, 687 (N.J. 2003); *City of New York v. Mobil Oil Corp.,* 783 N.Y.S.2d 75, 80 (N.Y. App. Div. 2004).

69

¶ 77. In a footnote, the majority opinion reveals that evidence of contamination or anticipated remediation costs will not be relevant in every condemnation case. *See* majority op., ¶ 48 n.5.

¶ 78. The fair market value of contaminated property is often very difficult to determine and when evidence of contamination is admitted, inconsistent valuation methodologies appear in the case law.[6]

¶ 79. Neither the majority opinion nor the court of appeals decision helps circuit courts to decide when evidence of contamination and anticipated remediation costs may or may not be relevant to determine fair market value in condemnation cases. Cases in other jurisdictions have grappled with a circuit court's exercise of discretion in admitting evidence of contamination and anticipated remediation costs, considering, for example, the difference between evidence of contamination and evidence of anticipated remediation costs, liability for remediation, availability of public remediation funds, indemnification from other parties, stigma of contamination even after remediation, fairness of the valuation to the condemnor and condemnee,[7] and other contamination-related effects on the market value of condemned property.

---

[6] *See* 7A *Nichols on Eminent Domain* § G13B.03[2][i], at G13B-59–G13B61 (3d ed. 2007).

[7] *See United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 (1950) ("Fair market value has normally been accepted as a just standard. But when market value has been too difficult to find, or when its application would result in manifest injustice to owner or public, courts have fashioned and applied other standards. . . . Whatever the circumstances under which such constitutional questions arise, the dominant consideration always remains the same: What compensation is 'just' both to an owner whose property is taken and to the public that must pay the bill?").

¶ 80. Under the circumstances of the instant case, the court should not address these significant issues. I would therefore not have this court write at length on the valuation of contaminated property in condemnation proceedings. I would either dismiss this matter as improvidently granted so that the decision of the court of appeals will stand as precedent or adopt the decision of the court of appeals, noting that there are many challenges in implementing this decision.

¶ 81. The majority opinion unfortunately makes the answer to the complex question of valuing contaminated condemned property deceptively simpler than it is, and therefore may lull litigants and courts into overlooking the complexities and possible injustices presented when valuing contaminated property in condemnation proceedings.

¶ 82. For the reasons set forth, I concur.